## THE STATE OF CALIFORNIA *v.* POULTERER.

The duty imposed by the forty-ninth section of the Revenue Act of 1857, for selling goods at public auction, is not a tax on the auctioneer, but a tax on the sale of goods, or the proceeds of the sale—the auctioneer being made the Collector of the State for the amount of the tax.

This duty may be collected by action of debt by the State against the auctioneer; and the penal remedy afforded by the fifty-second section of the act is not an exclusive remedy.

The forty-ninth section of the act makes the auctioneer liable to pay this duty, and the meaning is that he shall be legally held to pay it. The fact that a bond is required of the auctioneer, conditioned for the performance of his duty, shows that the Legislature did not mean to restrict his responsibility to the penal provision of the act—as the bond covers this duty of paying over the money to the State.

The criminal process of the fifty-second section is not a remedy provided by the statute for the payment of the duty imposed, but a mere provision for the punishment of those who violate the law. The remedy spoken of by the authorities, as excluding any other remedy, means the process provided by the Legislature, whereby the specific duty may be enforced. But under our act, the remedy is not such; for, after the party has been fined and imprisoned, the duty of paying over to the State the money in the hands of the auctioneer remains.

The giving a bond in such cases, instead of limiting the remedy to suit on the bond, is merely a cumulative security.

Where a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied; and where the law requires a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands.

When a statute casts upon a party an obligation to pay money to particular persons, without providing a remedy for its recovery, an action of debt will lie.

There is a distinction between this case and cases cited against the result reached here. That distinction is, that in the cases of the creation of a power or duty by statute, the statute giving the power or casting the duty is alone looked to to determine the power given or duty cast, and has provided its own exclusive remedy for the execution of the power or the enforcement of the duty. The statute is complete in itself; giving a power or imposing a duty on its own terms—the remedy to be taken in connection with, and as a part of the right. But this is a matter of legal inference from the statute, and this inference may be repelled by the express language or the general scope of the act. In this case, the State's money is confided to a certain class of officers or agents; bond is required of them to secure the payment; the act declares that they shall be held liable, and subject to pay this money. The meaning is, not merely that they shall be subject to punishment for not paying, but "liable for the payment"—"the parties *hereby held liable,*" being the expression used. This is equivalent to saying, that they shall be subject to the legal course of proceeding for the enforcement of such liabilities. This is by suit in this form. When, after this, a penalty is added as a punishment for this and other violations of this general duty of auctioneers, by no rules of construction can it be held that this penalty was intended to do away with the other, and only effectual remedy first given; effect must be given to the whole statute, and these words quoted are wholly unnecessary, if the only remedy were that given in the penal clause.

Under the act here, the auctioneer's liability does not depend upon his statement or exhibit of the sales made by him. The act creates a liability for the percentage, and the provision therein for the statement under oath, is only a means for arriving at, or enforcing a settlement. If the auctioneer fail of his duty in making the statement, he is in no better situation than if he discharged it.

State of California *v.* Poulterer.

Nor does the fact that the defendant was not licensed as an auctioneer, or did not give the business, and acted openly as an auctioneer, he is estopped to deny the responsibilities of an auctioneer. He cannot plead his own wrong in failing to comply with the law in bar of his responsibilities for violating its provisions.

Under the act, it is the duty of the auctioneer each month to make the statement of the amount of his sales for the month preceding, and at that time to pay over to the State what is then due as per his statement. No demand of payment is necessary. The auctioneer, if he fail to make the statement or pay the money, is in default by his own act, and is a debtor to the State for the amount so due.

*Semble:* that the actual collection and receipt of money by the auctioneer are not necessary to create his liability for the duty. This liability attaches *prima facie upon the sale of the goods;* and it is for the auctioneer to show legal excuse for not collecting the proceeds of sale.

If the auctioneer, under this act, be merely the agent of the State to collect and pay over its dues on sales of goods, it is doubtful whether his liability to the State for the duty imposed on such sales flows from the statute. By the common law, independent of any statute, such an agent would be responsible to his principal for the money so received. If the auctioneer chooses to put himself in this relation—that is, accepts and assumes this trust, his liability would seem not to flow from the statute, but, like that of any other custodian of funds, would arise from the general law defining the responsibilities of such agents. And the principle that, as the law had already fixed the liability from these facts, the particular remedy given by the statute would be merely cumulative, would seem to apply; but this point is not here decided.

This suit, not being a prosecution, but a civil action for the recovery of money due the State, is properly brought in the name of the State.

An action of debt for taxes will not lie when the predicate of the action is a mere assessment upon property. Much depends upon the language of the act creating the tax. If the act merely impose a tax upon property, and provide a particular process for enforcement, as a sale of the property, no suit can be brought against the person to collect the tax. If a personal liability be imposed for the tax, and the act is silent as to the mode of enforcement, then an action would lie for the enforcement of the obligation; for the rule is general, that debt lies at common law to enforce a statutory duty, or penalty, or forfeiture.

APPEAL from the Twelfth District.

· The facts appear in the opinion of the Court. Plaintiff appeals.

*Gregory Yale, with the Attorney General,* for Appellant.

1. Where a statute gives a new right, and also prescribes the remedy, that remedy alone can be pursued.

2. When a statute gives a remedy for a common law right, for which there was a common law remedy, the remedy is cumulative, and the old or the new can be pursued.

State of California *v.* Poulterer.

3. But when a statute gives a new right, and prescribes no remedy, the common law furnishes an appropriate one.

4. When a statute gives a new right, and prescribes no remedy, but imposes a penalty for the infringement of the right, the penalty does not prevent the common law remedy from attaching. When a statute casts upon a party an obligation to pay money to particular persons, without providing a remedy for its recovery, an action of debt will lie.

In support of the third and fourth points, the appellant relies on the following authorities. (3 Black. Comm. 161; 1 Chitty's Plead. 112; Sedgwick on Statutes, 91–2, 401; *Ewer* v. *Jones*, 2 Salk. 415; *Attorney General* v. *White*, 1 Comyn's Rep. by Rose, 433, case 291; *Tilson et al.* v. *The Town of Warwick Gas Light Co.* 4 B. & C. 961 (10 Eng. C. L. 887); *Bullard* v. *Bell*, 1 Mason, 290, 298–300; *United States* v. *Lyman*, Id. 498–503; *Smith* v. *Drew*, 5 Mass. 515; *Portland Dry Dock & In. Co.* v. *Trustees of Portland*, 12 B. Mon. 77–80; *United States* v. *Hathaway*, 3 Mason, 324; *Vaughn* v. *Thompson*, 15 Ill. 39–41; *Bigelow* v. *Johnston*, 13 Johns, 428; *Osborn* v. *Holmes*, 9 Barr. 333.)

That the liability is personal, see *Morsely* v. *Tift*, (4 Florida); and that to require a bond as security is not a remedy, see *United States* v. *Lyman* (1 Mason, 502–3); that such a bond would be good at common law, though not executed according to the statute, see *United States* v. *Tingey* (5 Pet. 515); that the penalty did not merge the civil right, see *Blassingham* v. *Glass* (6 B. Mon. 38); *Manro* v. *Almeida* (10 Wheat. 494); *Cotton* v. *United States* (11 How. 231); *Foster* v. *Com.* (8 W. & S. 77).

*Hoge & Wilson*, for Respondent.

I. The law referred to in the complaint creates a public duty, on the part of the citizens, to the sovereignty, and this prosecution is to enforce it. The prosecution should be in the name and by the authority of the people of the State of California. (Art. 5, sec. 18, Const.)

II. The act provides (Stat. 1857, 341–2; Wood's Dig. 68, 69) that the duties shall be ascertained in a particular mode pointed out, *i. e.*, by the account and oath of the auctioneer. No other mode can be resorted to. *Expressio unius exclusio alterius.*

The complaint does not show any such account and oath, and that the amount claimed appears and was ascertained in that way; nor does it show a refusal of the defendant, nor a default in rendering such account.

State of California *v.* Poulterer.

There is an attempt to find out here, by witnesses before a jury, what the law provides shall be ascertained in a different mode.

" Statutes which impose restrictions upon trade or common occupations, or which levy an excise or tax upon them, must be construed strictly." *(Sewell* v. *Jones,* 9 Pick. 414.) Each auctioneer is made his own assessor.

III. . Auctioneers are officers, and act under oath and bond. (Acts 1850, 456; Acts 1854, 112; Acts 1852, 36–7–8; Acts 1853, 242; Acts 1857, 341–2–4; Wood's Dig. 68, and following; Acts 1860, 380; sec. 39.   See, also, art. 6, Law of 1854, 97 to 99, on consigned goods— still in force.)

The allegations of the complaint do not show with sufficient clearness that defendant is an official auctioneer, but seem to treat any person as liable to this duty who sells at auction.

The statute has other and higher objects in view than the collection of a tax.   It entrusts the authority of auction sales, which is peculiarly liable to abuse, and presents opportunities, if it does not hold out encouragements, for the practice of fraud and imposition, only to men who for their character for probity and fair dealing may be deemed by the municipal authorities safe depositories of such power.   Sales at auction were regulated, and prohibited to all but licensed auctioneers, long before any auction duty was imposed. *( Commonwealth* v. *Hamden,* 19 Pick. 483.)

IV.   This action is based on a misapprehension of the law.   The tax is on the property sold, " to be levied on the amount for which actually sold," etc.

The auctioneer is the mere collector of this tax.   The State looks to him for it, but not as his debt, but as a tax on the proceeds of the sales by him of any person's goods.   This seems to be the rational theory, and is so held in Pennsylvania. *(Dallas* v. *Chalconer,* 3 Dall, 500; *Lea* v. *Yard,* 4 Id. 97; *Yard* v. *Lea,* 3 Yates, 335; *Davis* v. *Connuth,* 3 Watts. 297.)

The State has the same security from him, for the faithful performance of his duties, as she has from her other officers, *i. e.,* his oath, his bond, and punishment by fine and imprisonment.   (Sec. 52, 342, Stat. 1857, and the penalties to be recovered under the sec. 24, 69, Wood's Dig. regulating auctioneers.

In Pennsylvania, the State duty is recovered from the auctioneer on the bond.   (See cases last above; see, also, in Massachusetts; see *Sewell* v. *Jones,* 9 Pick. 414.)

The action on the bond is sufficient for the State, whether the auctioneer fails to collect the State duty, or collecting it, fails to pay it over.

This complaint treats this tax as a simple debt of the auctioneer, and not a mere duty, to be collected by him, and paid out of the proceeds of sale. The whole gravamen of the action is a misconception.

V. It does not appear by the complaint, that the sales were consummated, nor that the money was collected by the auctioneer, so that he could levy the duty on the amount of the actual sale, nor that the purchase money was paid. (*Southwell et al.* v. *Hughes,* 1 Curtis, C. C. 245–6)

VI. To whom is the auctioneer to pay this State duty? To the Tax Collector or the County Treasurer? The latter would seem to be the proper officer, but this is not clear. (Wood's Dig. 71, sec. 22, of Act of 1854, providing for payment to County Treasurer, repealed.)

The complaint does not show any demand by any particular officer, nor a failure to pay any particular officer; but only says, in the most general way, that payment has been demanded by the State, and refused by the defendant.

The law does not say when this duty shall be paid; it only provides for monthly statements.

For anything that appears in the complaint, (filed January 21st, 1859) all these sales may have occurred in January, 1859, and the time to account would not be until the first Monday of February, 1859.

All that is alleged in the complaint may, therefore, be true, and yet the defendant not be in default, at the time this action was commenced.

VII. But no action will lie to recover taxes or duties of this character, unless an action is given by the statute, in express terms.

"It is a rule, founded in sound reason, that when a statute gives a new power, and, at the same time, provides the means of executing it, those who claim the power can execute it in no other way. This rule applies to all taxes, public and private. No action can be maintained to compel the payment of State, county, or town taxes, except in the particular cases in which an action is expressly given by the statute," etc. (*Andover Med. Turn. Co.* v. *Gould,* 6 Mass. 44.)

In *Shaw* v. *Pickett* (26 Vt. [3 Deane] 485–6) the Tax Collector undertook to claim interest on delinquent taxes. The Court says there is no provision on the subject of interest, and, examining it on general principles, says: "The assessment of taxes does not create a debt that

State of California *v.* Poulterer.

can be enforced by suit, or upon which a promise to pay interest can be implied.  It is a proceeding purely *in invitum.*  The existence of a contract, either expressed or implied, is the ground upon which interest is generally allowed."

In Massachusetts an action is given in express terms by the statute. (*Danforth* v. *Williams,* 9 Mass. 324.)

So also in matters pertaining to the revenue of the United States. (*Walsh* v. *United States,* 3 Wood. & Min. 342, and following.

*The People* v. *Craycroft* (2 Cal. 243) ought to be conclusive.

Every tax law provides for its own mode of enforcement.  This law has very stringent provisions, and those amply sufficient to enforce the collection.  We have been unable to find a single case where an action like the present has been maintained.  In a matter so common as the collection of taxes in England and America, if no such case can be found, it would seem to be conclusive against the right to maintain such an action.  (See also *Wiley* v. *Gale,* 1 Met. 553 ; *Rex* v. *Wright,* 1 Bur. 543 ; *Rex* v. *Robinson,* 2 Id. 803.)

The failure to pay this duty is a public wrong, an offense, a misdemeanor.  How can it be prosecuted—in the absence of an express statute—in the form of a civil remedy ?  Unlike most public offenses, here is no private injury connected with the public offense.  It is the delinquency of a mere *malum prohibitum,* and is to be enforced like any other public offense, in the mode pointed out by law.  (*Renwick* v. *Morris,* 7 Hill, 576 ; *Stafford* v. *Ingersoll,* 3 Id. 38 ; *Almy* v. *Harris,* 5 Johns. 175 ; *Bassett* v. *Carlton,* 32 Me. 553 ; *People* v. *Craycroft,* 2 Cal. 243.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The complaint in this case avers that the defendant was an auctioneer in the city of San Francisco, between the twenty-ninth of April, 1857 —the date of the passage of the Revenue Act, hereafter mentioned— and the bringing of this suit; then and there doing business under the style of Poulterer & Co.; that Poulterer, as such auctioneer, sold at public auction, on account and for the firm, goods, etc., to the amount of $60,000, whereby a debt accrued to the State to the amount of $300.

To this complaint the defendant demurred, assigning several causes of demurrer.  1. That the Court has no jurisdiction of the person of the defendant.  2. Nor of the subject.  3. That the plaintiff has not

State of California *v.* Poulterer.

the legal capacity to sue.    4. That there is a defect of parties plaintiff. 5. That the facts stated show no cause of action.    The Court below sustained the demurrer, and gave judgment for the defendant.

1. The main question affecting the merits is, whether this suit can be maintained, on behalf of the State, to enforce the payment of the duty directed to be paid, by the Revenue Act of 1857, by auctioneers, on sales of goods.    The Act of 1857 (Session Acts, 341) contains these sections, applicable to auctioneers in this connection:

"Section 49. All goods, wares, merchandise, and other species of personal property, of whatever kind or nature, which shall, at any time, be offered or exposed for sale at public auction, or which shall be sold at private sale by any auctioneer, or by any partner, clerk, or agent of any auctioneer, shall be subject, each and every time such goods, wares, merchandise, or other species of personal property are actually sold, either by any auctioneer, or by any partner, clerk, or agent of an auctioneer, or by any other person for the account or benefit of any auctioneer, or for the account or benefit of any firm or partnership of which any auctioneer is a member, or in which he is interested, to the payment of the duty of one-half of one per centum, which duty shall be levied upon the amount for which such goods, wares, merchandise, or other personal property are actually sold; the auctioneer, and each member of the auction firm or partnership so selling, or causing or allowing such selling, shall be liable for the payment of the duty hereby imposed for such selling. *Provided, however,* that full payment made by one of the parties hereby held liable, shall release the others.    *And provided further,* that this section shall not be so construed as to require the payment of any duty upon the sale at auction of any property belonging to the United States, or to this State, or upon property sold by any officer by virtue of any execution or order of any Court.

"Section 50. The duties which this act imposes shall be ascertained as follows, viz: On the first Monday in each month each and every auctioneer shall make out, under oath, and deliver, as is hereinafter required, a true and correct statement of all goods, wares, and merchandise, or species of personal property sold, either at public or private sale, by him, or by the firm or partnership of which he is a member, or by any partner, clerk, agent, or other person for him, or his firm or partnership, or for the account or by the authority of himself or of his firm or partnership, or of any member thereof, during the month last preceding; and he shall, in such statement, particularly designate:

34

" First. The actual sum for which all property at public auction was sold.

" Second. The actual sum for which all property sold at private sale was sold.

" Third. The duty that has accrued in favor of the State during said month.

" Fourth. The days on which each sale took place, and the sum or value of the property sold on each day, and the duty which accrued thereon in favor of the State.

" Section 51. On the said first Monday in each month, or within two days thereafter, each and every auctioneer shall present to the County Auditor the statements which section fifty requires him to make; whereupon the Auditor shall administer to said auctioneer the following oath :

" You solemnly swear that the account now presented by you contains a true and correct statement of all the goods, wares, merchandise or other species of personal property which you, or the firm of which you are a member, or which any partner, or clerk, or agent of either yourself or of said firm, or any other person for you or for your firm, or by the knowledge, authority, consent or account of yourself or of your firm, have sold, either at public auction or at private sale, during the month ending on the last day of - - - - , 185 , inclusive, and that no sales other than those in this account stated have been, during that time, made by you or by your partner, agents or clerks, or by any other person, at your usual place of business ; and that no sales intended, or in any manner likely to avoid or prevent the collection of duties imposed on sales by auction, have been made elsewhere with your knowledge or consent, or with the knowledge or consent of your firm, or for the benefit of yourself, of your firm or of any member of it. And you further swear that, during the time mentioned in this statement, you have in all things, to the best of your knowledge and belief, conformed to all the laws regulating or licensing auctioneers, or imposing duties on sales at auction or by auctioneers.

" SEC. 52. Every person, being an auctioneer, who shall sell any goods, and shall neglect or refuse to comply with, or who shall directly or indirectly violate the provisions of sections forty-nine, fifty and fifty-one, or either of them, of this act, shall be deemed guilty of misdemeanor, and upon conviction thereof, shall be punished by fine of not less than one hundred dollars nor exceeding five hundred dollars, or by imprisonment not exceeding six months, or by both such fine and imprisonment."

State of California *v.* Poulterer.

It is thus seen, that by the forty-ninth section it is expressly declared that the auctioneer, and each member of the auction firm or partnership so selling goods at auction, or causing or allowing such selling, *shall be subject to and liable for the payment of the duty imposed* for such selling; and that by the fifty-second section a violation by the auctioneer of the forty-ninth, fiftieth and fifty-first sections of the act is punishable as a misdemeanor.

We agree with the counsel for the respondent, that this is not a tax on the auctioneer, but a tax on the sale of goods, (or the proceeds of the sale) the auctioneer being made the collector of the State for the amount of the tax.   This seems to be the understanding in the States of Pennsylvania and Massachusetts, in regard to auctioneers, under laws not unlike those here in this respect.   (See also, 4 Florida R. *Mosely* v. *Tift.*)   The auctioneer receiving these proceeds, or making these sales, is authorized to retain this percentage, and settles with the State in the manner directed by the statute.   The general law in reference to auctioneers is to be found in Wood's Dig. 68.   By the first section, it is provided that any citizen of this State may become an auctioneer for the county in which he resides, on giving bonds, in accordance with law, for the faithful performance of his duty, and the payment of the license tax mentioned—*i. e.*, at the rate of one hundred and twenty-five dollars the quarter year, etc.   The bonds to be payable to the people of the State of California, with one or more sureties. Provision is made in the act for a license tax, to be paid the County Treasurer, and on his receipt, a license to be issued by the Auditor. Persons other than licensed auctioneers are forbid, under a penalty, from doing business as auctioneers.

Two principal grounds are taken by the respondent's counsel against the liability of the defendant to suit in this form.

1. That the liability of the auctioneer to pay this duty is created only by statute, and that the same act provides an effectual means of enforcing the obligation.   It is argued, that when a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way.   And it is said, that the statute of 1857 gives an effectual remedy, by the penalty annexed to the violation of the duty of the auctioneer in the fifty-first section.

2. That the auctioneer is a public officer, who is required to give bond, and that this bond is an effectual remedy, and that suit must be

brought upon it for a violation of the duty charged, supposing any action on the facts could be maintained.

The respondent's counsel have argued these propositions with their usual learning and ability.

The first case cited is *The Andover and Medford T. Co.* v. *Gould,* 6 Mass. 42. That was *assumpsit* to recover the amount of certain assessments upon the share in the turnpike owned by the defendant, who was one of the original associates. The only evidence produced at the trial for the plaintiff was a subscription, signed by defendant, among others, agreeing to take and pay for a share in the stock of the company. The corporation declared an assessment, and sued defendant for the amount assessed against him as an implied promise to pay. Parsons, C. J., said that, as the power to levy these assessments did not exist, by the common law, in corporations, the statute must be looked to to determine the question; and the statute only provided for a sale of the shares to pay assessments of delinquent stockholders. And then, in announcing the principle governing such cases, uses this language: " But it is a rule founded in sound reason, that when a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way. When we find a power in the plaintiffs to make the assessments, they can enforce the payment in the method directed by the statute, and not otherwise, and that method is by the sale of the delinquent's shares. This rule applies to all taxes, public and private. No action can be maintained to compel the payment of State, county or town taxes, except in the particular cases in which an action is expressly given by the Statute of 1789, Ch. 4. The same rule applies to taxes assessed by parishes, and also (Statute of 1785, Ch. 53, sec. 3) by the proprietors of general fields. It may be said, that in these cases the warrant to collect is an execution, and the right of action is generally unnecessary. This is granted; but the right of action, if it existed at common law, is not taken away. And the taxes assessed by proprietors of lands holden in common are not collected by any warrant of distress; but the statute remedy is a sale of the delinquent proprietor's share, and not by an action against him to recover the assessment."

The same Judge said, in conclusion: " In fine, our opinion is, that when the corporators expressly agree to pay the assessments, to induce the corporation to make the road, an action can be maintained on that agreement; that if there be no such agreement, the remedy for the

corporation is by the sale of the delinquent's shares, pursuant to the statute; and that, in the present case, the subscription paper is not evidence of such express agreement."

In *Shaw* v. *Pickett* (26 Vt. 485) the only question was, whether interest could be charged on a tax-bill over due. It was held it could not be, the Court saying that the assessment did not create a debt that could be enforced by suit. The Court say, further, that, without express statutory provision, interest could not be charged on a judgment. *Wiley* v. *Yale* (1 Met. 553) was an action under the statute to recover threefold the amount of usurious interest paid by the plaintiff. There, the statute gave a right of action by debt or bill. This was *assumpsit.* C. J. Shaw said : " When a statute gives a new right, and prescribes a particular remedy for its recovery, such remedy must be strictly pursued; though it is otherwise when the statute gives a right without prescribing the remedy. In the latter case, the common law affords the remedy, and any suitable form of action may be adopted." *Rex* v. *Robinson*, 2 Bur. 803 ; 2 Saund. Pl. and Ev. 829 ; *Renwick* v. *Morris*, 7 Hill, 576, announce the same doctrine. We do not understand that this case goes further than to decide that where a remedy is given by statute, for an offense constituted by statute in the nature of a misdemeanor, whether penalty or otherwise, that the specific remedy must be pursued. So in *Stafford* v. *Ingersoll*, (3 Hill, 41) the Court, per Bronson, J., said : " When a statute merely gives a new remedy, without any negative, expressed or implied, the old remedy is not taken away, and the party may have his election between the two. (2 Inst. 200 ; *Clark* v. *Brown*, 18 Wend. 220, 1, per Walworth, Chancellor ; *Colden* v. *Eldred*, 15 Johns. 220.) The case of *Atkins* v. *Kinnan*, (20 Wend. 241) to which we are referred, does not lay down a different doctrine. The discussion there was upon a statute in derogation of the common law, which divested the party of his title to land and gave it to another ; and we held that the statute must be strictly pursued, or the title would not pass. So, where a statute creates a right which did not exist before, and prescribed the remedy for a violation of it, that remedy must be pursued. *(Almy* v. *Harris*, 5 Johns. R. 175.) But the statute under consideration does little more than declare that the injured party may, in certain cases, have his damages appraised by the fence viewers ; and I am not aware of any rule of interpretation upon which this can be made to take away the remedy that before existed at the common law.

"It may be that the statute has in some cases given a remedy against the owner of the adjoining close where none existed at the common law. In cases of that description the statute remedy must be pursued. But where there was an action at common law, that remedy still exists."

*Almy* v. *Harris* (5 Johns. 175) does not go further. That case expressly admits, if the remedy exists already by the common law, the new remedy given by the statute does not destroy it. *Bassett* v. *Carleton* (32 Me. 553) is no stronger. *The Peoyle* v. *Craycroft* (2 Cal. 245) is a strong case for the respondent. In that case it was held that an action of debt could not be maintained for the tax of thirty-five dollars each for gaming tables, given by the Act of 1851, "to license gaming." The opinion was delivered by Chief Justice Murray, who held that no action would lie for the collection of the license money, but indictment was the only remedy.

These authorities are not inconsistent with the principle supported by many cases, and denied by none, that when a statute casts upon a party an obligation to pay money to particular persons, without providing a remedy for its recovery, an action of debt will lie. *Bullard* v. *Bell* (1 Mason, 283) is a case which seems, in the argument of counsel and in the opinion, to exhaust all the learning on the subject of actions given by statute. Suit was brought against a stockholder of a bank upon a bank-note issued by the corporation, under a provision of the New Hampshire statute, which declared that, if the corporation should divide their stock before paying their bills, the stockholders, jointly and severally, should be liable to the holder. Judge Story said: "Nothing can be better settled than that an action of debt lies for a duty created by the common law, or by custom. *A fortiori* it must lie, where the duty is created by statute. Mr. Justice Blackstone says, 'that every person is bound, and hath virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. Whatever, therefore, the law orders any one to pay, that becomes instantly a debt which he hath beforehand contracted to discharge.' Without placing any reliance upon this refined notion of contracts, it cannot be doubted that the learned Judge has expressed the true doctrine of the law. Whatever is enjoined by statute to be done, creates a duty on the party which he is bound to perform. The whole theory and practice of political and civil obligations rest upon this principle.

State of California *v.* Poulterer.

" When, therefore, a statute declares that under certain circumstances a stockholder in a bank shall pay the debt due from the bank, and these circumstances occur, it creates a direct and immediate obligation to pay it. The consideration may be collateral or not; but it is not a subject of inquiry. And to deny that it is a duty on the stockholder to pay the money, is to deny the authority of the statute itself; for a duty is nothing more than a civil obligation to perform that which the law enjoins. Here, then, the law has declared that the stockholders shall be liable to pay a specific sum, and it imposes on them a duty so to do. How, then, can the Court say that debt does not lie, since there is a duty on the defendant to pay the plaintiff a determinate sum of money ? There is no room, under this view of the case, for entertaining any question as to collateral undertakings. The law has created a direct liability; a liability as direct and cogent as though the party had bound himself under seal to pay the amount, in which case debt would undoubtedly lie. The law esteems this an obligation created by the highest kind of specialty."

*United States* v. *Lyman* (1 Mason, 482) was an action of debt brought by the United States to recover $17,242 40, being the amount of duties due on five hundred chests of tea, imported into the port of Boston, in the ship Alert, in July, 1816. The point here made by the counsel of respondent, was pressed with zeal by the counsel for defendant. Prescott and Thatcher contended, with great confidence, that the Legislature have expressly prescribed in the sixty-second section of the Collection Act of March, 1799, what security shall be taken by the Government for the duties on tea; and that it was upon this security only that they can rely. This section provides for giving a bond, etc., by the importer. This bond was given, and accepted, and this was held by counsel to be a release by the Government of the common law remedy. Judge Story said : " The first question is, whether an action of debt lies in this case. By the common law, an action of debt is the general remedy for the recovery of all sums certain, whether the legal liability arise from contract, or be created by a statute. And the remedy as well lies for the Government itself, as for a citizen. And where the debt arises by statute, an action or information of debt is the appropriate remedy, unless a different remedy be prescribed by the statute. * * * It being, then, ascertained that, upon the principles of the common law, an action of debt is the proper remedy for duties against the owner or importer, the next consideration is, whether a different remedy has been prescribed

by any statute of the United States.   The argument of the defendant's counsel is, that by the Revenue Act of 1799, Ch. 128, the duties were required to be paid, or secured by bond to be paid before they were permitted to be unladen; and that this security by bond constitutes the exclusive remedy for the Government for the recovery of the duties. I cannot yield the slightest assent to this argument.   In the first place, the bond, if given, is not, strictly speaking, a statute remedy, but a statute security for the debt.   A remedy, as understood in legal phraseology, is a mode prescribed by law to enforce a duty or redress a wrong, and not an obligation to guarantee a right or to indemnify against a wrong.   The remedy for the duties, when a bond is given and remains unpaid, is not, technically speaking, the bond itself, but a suit to enforce the payment of the bond.   The technical rule, therefore, that where a statute remedy is given, it excludes the common law remedy by action of debt, does not apply; for the statute prescribes no such remedy."

*The Attorney General* v. *White's Executors* (2 Comyn's R. 433) was a case of this sort.   An information of debt was exhibited against defendant for £1,140, for the duties of 3,600 gallons of brandy, imported by her testator on the tenth of February preceding.   The jury found that the testator imported these brandies in the year 1719 and 1720, in casks containing but twelve gallons each; and that he died before the duties were paid.   It was insisted, on behalf of defendant, that since by statute (4 and 5, W. & M. Ch. 5, sec. 8) the importation of brandy in small vessels and casks not containing each sixty gallons at least, was prohibited, on pain of forfeiting the said brandy, or value thereof, the King ought, in this case, to have sued for the forfeiture, and not by way of debt for the duties or customs which would have been payable in case the brandy had been fairly imported.   The case was argued for the Crown by the attorney and Solicitor General, who argued that wherever the common law or custom creates a duty, debt lies for it, and it must be the same wherever the statute enacts anything for the advantage of another.   In answer to the objection, that by the proviso in the statute, (4 and 5, W. & M. Ch. 5, sec. 8) if brandy be imported in casks under sixty gallons each, it is forfeited, and then the action is not to be maintained for the duty, it was said that this prohibitory clause does not extinguish the duty, but the King may take advantage of either as he pleases.   " It will not be said, because, by statute (1 Anne, Ch. 14) it is enacted, if any import or land goods, etc., before duty paid or secured, or be aiding, etc., he shall forfeit the goods

State of California *v.* Poulterer.

and double the value, that therefore the King can have no remedy for the duties.  And what difference, when such forfeiture is given in the same or some other act?"

Hale was cited (2 Mod. 128): " That if in an Act of Parliament there be a prohibitory clause, and another which gives a penalty, an information lies on the prohibitory clause, and the party may decline to proceed for the penalty. * * * So upon this very statute (4 and 5, W. & M. Ch. 5) it hath been held that debt lies for the duties." After this argument, the Court gave judgment for the King. It is true, that the extract and argument given above were those of counsel, but they are worthy of consideration, as well from the high character of the counsel, as from the fact that the general views presented must have received the assent of the Court in this case.

We do not think it necessary to review the whole of the authorities cited. We have examined them, and when considered in reference to the facts of the particular cases decided, they do not seem to conflict in any substantial matter.

In regard to taxes, and the character of liability which the laws imposing them create, we have laid down rules recently in several cases. It is unquestionable, that an action will not lie when the predicate of the action is a mere assessment upon property. Much depends upon the language of the act creating the tax. If the act merely impose a tax upon property, and provide a particular process for enforcement, as a sale of the property, no suit can be brought against the person to collect the tax. If a personal liability be imposed for the tax, and the act is silent as to the mode of enforcement, then an action would lie, according to the cases cited, for the enforcement of the obligation ; for the rule is general, that debt lies at the common law to enforce a statutory duty, or penalty, or forfeiture ; and it is impossible for us to see any magic in the word taxes—as is well remarked by the Court of Appeals of Kentucky, in 12 B. Monroe—which puts a duty to pay taxes upon any different footing from any other duty.

It may be well doubted—if the construction be right which we place upon the relation the auctioneer occupies to the State as a mere agent to collect and pay over its dues on the sales of goods—whether the doctrine insisted upon by respondent be maintainable. By the rules of the common law, independent of any statute, such an agent would be responsible to his principal for the money so received. If the auctioneer should choose to put himself in this relation, that is, should

accept and assume this trust, we do not see that his liability would flow from the statute, but, like that of any other custodian of funds, would arise from the general law defining the responsibility of such agents. The principle then would seem to apply that, as the law had already fixed the liability from these facts, the particular remedy given by the statute would be merely cumulative. (See the many authorities cited in the learned argument in *Rex* v. *Wright*, 1 Burrows, 543; *Rex* v. *Robinson*, 2 Id. 803.)

But we do not care to put the case upon this principle. We think that the remedy afforded by the penal clause in this statute is not the exclusive remedy provided by law for the enforcement of the duty of paying over this tax by the auctioneer. Whatever the general rule in ordinary cases, and whatever the reason upon which it is founded, it is clear that the construction of the act must depend upon the particular language. In this case, there is a clear declaration in the forty-ninth section that the auctioneer shall be held subject and liable for this duty. The meaning of this is, that he shall be legally held to pay it. If nothing more was added, according to all the cases, an action could be maintained by the State to compel the payment. But there is a provision that, for the failure of this among other duties, a criminal prosecution will lie. Does this destroy the obligation of payment, or deny the usual mode of enforcing it? If this be so, it might be contended that, if the Treasurer embezzled the public funds, and impeachment or indictment were alone prescribed for this public offense, no civil action could be brought to recover the money, although the statute declared he should be liable for the money coming to his hands. The fact that a bond is required of the auctioneer, the bond being conditioned for the peformance of his duty, is decisive that the Legislature did not mean to restrict the responsibility of the obligor to the penal provision; for it seems to be conceded that the bond covers this duty of paying over this money due the State from sales. Taking the whole act together, then, it nowhere appears that this criminal process was intended to be the exclusive remedy. In truth, we do not consider it a remedy provided by statute for the enforcement of this duty of paying this money. It is not a remedy for the payment of this debt at all; but a mere provision for the punishment of those who violate the law. We understand the remedy spoken of in the authorities as precluding any other remedy, to mean the process provided by the Legislature whereby the specific duty may be enforced. This is not such a remedy; for, after

the party has been fined and imprisoned, the duty may and still does remain undischarged—the duty, namely, of paying over money belonging to the State in the hands of the auctioneer.   Suppose a clerk, who, having no authority except by statute (differing from the common law) to collect money, and the statute giving this power declared him liable for the sums so paid him, and then in a subsequent clause provided that, for any violation of his duties, he should be subject to criminal prosecution; would any one contend that he was not liable to the party whose money he embezzled for the amount of it?   And yet, this case is not substantially different from that.

We have already seen by the citations from 1 Mason and other cases, that the giving of the bond does not limit the remedy to suit on that instrument, but is mere cumulative security, as has often been held in case of Sheriff's bonds, etc.

The penal clause affords no adequate redress to the State for the default.   A clear right, therefore, is given by statute, for which there would be no remedy.   But the rule is, wherever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied; and that where the law requires a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands.   (Sedg. on Stat. and Const. Law, 91, 92.)

The distinction seems to us clear between this case and the cases cited by the respondent.   That distinction is, that in the cases of the creation of a power or duty by statute, the statute giving the power or casting the duty is alone looked to to determine the power given or duty cast, and has provided its own exclusive remedy for the execution of the power or the enforcement of the duty.   The statute is complete in itself, giving a power or imposing a duty on its own terms—the remedy to be taken in connection with and as a part of the right.   But this is a matter of legal inference from the statute, and this inference may be repelled by the express language or the general scope of the act.   In this case, the State's money is confided to a certain class of officers or agents; bond is required of them to secure the payment; the act declares that they shall be held liable and subject to pay this money.   The meaning of this is, not merely that they shall be subject to punishment for not paying, but "liable for the payment"—"the parties *hereby held liable*," are the expressions used.   This is equivalent to saying, that they shall be subject to the legal course of proceeding for the enforcement of such liabilities.   This is by suit in this form.

When, after this, a penalty is added as a punishment for this and other violations of this general duty of auctioneers, it seems to us no rules of construction require us to hold that this penalty was intended to do away with the other and only effectual remedy first given. We must give effect to the whole statute, and these words quoted are wholly unnecessary, if the only remedy were that given in the penal clause.

We have extended this opinion to such length, that we can only briefly refer to the more technical points made by respondent:

1. We think the point is not well taken that the defendant is only liable upon his statement or exhibit of the sales made by him. The act creates a liability for the per centage, and this provision for the statement is only a means of arriving at and enforcing a settlement. If the defendant fails of his duty in this respect, he is in no better situation than if he discharged it—any more than would be a Treasurer or Tax Collector failing to keep books or make his returns.

2. That the fact, if it be so, that the defendant was not licensed as auctioneer, or did not give bond, is not important. Having done the business, and acted openly as auctioneer, it does not become him to deny the responsibilities of that character. He is estopped to make the denial. He cannot plead his own wrong in failing to comply with the law in bar of his responsibilities for violating its provisions.

3. The payment is to be made to the County Treasurer. (Wood's Dig. 71, secs. 18, 20.) By the act, the auctioneer is made the actor; he is to make the statement and the payment. As the statement is to be made every month for the month preceding, and this shows the money he has on hand or owes to the State on this account, the fair inference is that he is to pay over at the time of the statement what is then due. We see no necessity for any demand in such case. The party is in default by his own act, and is a debtor to the State for the amount so due.

Nor does it seem that the actual collection and receipt of money by the auctioneer are necessary to create his liability for the duty. It attaches upon *the sale of the goods.*

4. This is not a prosecution, but a civil action for the recovery of money due the State. The suit, therefore, is properly brought in the name of the State.

Judgment reversed and cause remanded.

On petition for rehearing, BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

We have examined the able argument of the counsel for the respondent upon petition for a rehearing.    But we are not convinced that the opinion reviewed is, in any substantial manner, erroneous.    We have not *decided* that the auctioneer is responsible for the tax, if he has been prevented, after the exercise of all proper and legal diligence as the agent of the State, in collecting or securing it.    That question did not necessarily arise on the case before us.    He was charged with the duty of collecting this tax, and it is to be presumed as the goods to be sold by him are placed in his hands, and are sold by him, that he has received the proceeds of the sale.    If, however, from any cause, not attributable to the negligence on the part of the auctioneer, the proceeds of the sale of the goods could not be or were not collected, this would present a different case from that in this record.    *Prima facie*, the auctioneer, being charged by law with a certain per centage on the amount of sales made by him, is responsible for the tax due the State; for it is his duty to retain and to pay over to the State this tax.    It rests with him to show in answer to his responsibility, that from some legal and allowable cause he has not collected or been able to collect this tax.    In this case, no such excuse appears, and we cannot presume that it exists.    The auctioneer, when it appears that he has sold goods, as such, is chargeable with the tax.    It is to be presumed he has retained it, as it is his plain duty to do.    If he has failed in that duty, he is responsible; and if from any cause he is excusable for not doing his duty, he is bound to show why he has failed to discharge it.

We deny the petition.