No. 10,976.

MILLER v. THE PEOPLE.

Decided July 7, 1924.   Rehearing Denied November 10, 1924.

Action by the people to recover gasoline tax.   Judgment for plaintiff.

*Affirmed,*

*On Application for Supersedeas.*

1.   TAXES AND TAXATION—*Gasoline.*   The gasoline tax provided by chapter 55, C. L. '21, is an indirect excise tax to be paid by the seller, who in turn may collect it from the user.

2.      *Gasoline Tax—Liability.*   The one who first receives the product in this state which he sells or offers to sell to a consumer is prima facie liable for the amount of the tax on the number of gallons so received.

3.      *Gasoline Tax—Amount—Proof.*   In an action by the state to collect a gasoline tax, the dealer must show the quantity sold, and the burden is upon him to show how much, if any, of the product is sold for a nontaxable use.

*Error to the District Court of Larimer County, Hon. George H. Bradfield, Judge.*

Mr. THOMAS H. GIBSON, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. RILEY R. CLOUD, Assistant, for the people.

Mr. WILLIAM A. HILL, amicus curiae.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE people, by the Attorney General, acting under instructions of the Governor, brought two separate actions in the district court of Boulder county and four in the district court of Larimer county against six different defend-

ants. The Boulder cases were transferred to the district court of Larimer county and these six, involving substantially the same questions of fact and law, were consolidated for trial and tried as one action. The object was to recover from the respective defendants, who are wholesale and retail dealers of petroleum products, under chapter 55, (Section 3660, et seq.), C. L. 1921; Session Laws 1919, p. 566, one cent a gallon on all such products by them "offered for sale, or used for consumption for power purposes in propelling motor vehicles." The district court in each case gave judgment for the plaintiff, to which judgment each defendant sued out a separate writ of error, and these cases, numbered respectively on our docket 10976 to 10981 both inclusive, by agreement of the parties have been consolidated for hearing in this court. Only one opinion No. 10976 will be written. Our decision and judgment therein apply to, and determine, the others.

This act purports to, and does, levy an excise tax of one cent a gallon upon certain designated petroleum products which are "offered for sale or used" for the purposes mentioned in the foregoing quotation. The validity of this statute was challenged in *Altitude Oil Co. v. People,* 70 Colo. 452, 202 Pac. 180. The act was sustained as a valid exercise of legislative power and the tax was held to be an excise and not a property tax. The decision was followed in *Riverside Ice & Storage Co. v. People,* in two separate cases reported in 72 Colo. 266, 267, 210 Pac. 1118. In one or more of those cases the defendant had collected the tax sued for. In the instant cases the defendants made no collection of a tax on the products which they received or sold. Because of this difference the defendants here contend that our previous decisions are not authority for the decision of the trial court here which was that the dealer, who first receives or sells or offers for sale or holds himself out as ready to sell for the designated purposes, is liable for the prescribed tax, and without proof by the plaintiff of the quantity sold or used, or that the product

was actually sold or used or intended for the statutory use to which the tax is restricted.

If, as contended by the defendants, the tax is levied not upon the dealer or seller but attaches only when the statutory use is made of the product by the buyer and is imposed upon the latter only, it would be impracticable, if not impossible, in the very nature of things, for the state to collect this tax. If for no other reason the courts should not so construe the act unless its language leaves no other alternative. The tax is not only an excise tax but it is an indirect tax, and taxes of this character, if not always, usually are levied upon and collected from a person other than the one who ultimately pays them. Here the tax, as the Attorney General claims, is imposed on one who sells or "offers to sell" or uses. It was competent for the lawmakers to require payment in the first instance by the seller and for him, in turn, to pass it on to the user. Such is the nature of the tax provided by our General Assembly. The statute does not expressly designate the person or the class or occupation of persons upon whom a tax is levied, but by implication, or as a matter of construction, it is, we think, imposed upon a dealer who sells or offers to sell the product, and the seller may compel the buyer to reimburse him therefor. In the Altitude Oil Company Case mentioned, this Court, in its opinion not only held the tax was valid but that it is a tax on a dealer. The defendant is mistaken in the statement that the only question decided by this Court in the Altitude Case was that the tax is valid. We there said, as to persons affected: "It (the act) applies to all sales of that kind, and affects all dealers in proportion to their sales. * * * It applies impartially to dealers throughout the state." If the Court had not construed the act as levying the tax on a dealer or seller, it would not have used such language. It is also apparent that the Court did not rest its opinion on the fact that the defendant had collected the tax, but, as the tax was imposed on the dealer, he is liable to the state to pay it whether he collects it or, as here, seeks to escape payment by refus-

ing to collect of the buyer and user who ultimately become liable, and from whom the dealer might lawfully reimburse himself as stated. It would be a novel doctrine to announce that one, who is made primarily liable by a statute for a tax, may escape payment merely because he neglects or intentionally refuses to collect it from the one ultimately liable, to whom he sells and from whom the law gives him the right to reimburse himself. To say that a dealer, who may lawfully sell a petroleum product only on the condition that a tax, measured by the quantity sold, shall be paid to the state, can escape payment by the subterfuge of refusing to collect from the purchaser, and thus enable him, the dealer, to sell for one cent a gallon less than his competitor, who obeys the law, would be to penalize the law observer and reward the law breaker.

These cases now before us were tried upon an agreed statement of fact, in substance the same in each case. These defendants were wholesale and retail dealers in petroleum products. They received carloads of gasoline which was transferred from the cars to their storage tanks and from these tanks some of the gasoline was put into tank wagons and thereby transported throughout the state and sold to farmers, grocery stores and filling stations and to various individuals, to whom the product was delivered by the dealers at the residence or place of business of the buyers. Some of the sales were made at wholesale, some at retail, prices, in each instance at a price of one cent a gallon less than that charged by their competitors who keep an accurate register or account of sales and pass on to the consumer or buyer the amount of the tax. These defendants, by thus selling and failing or refusing to collect the tax of the buyer, were and are able to, and did, and can, sell for one cent a gallon less than their competitors, and the state gets no revenue or tax therefrom. If their methods are sanctioned by the courts, it needs no argument to demonstrate that their competitors, who observe the statute, will be driven out of business, and the defendants, violators of the law, will have the field to themselves,

unless their competitors imitate them and become law-breakers.

The defendant specifically contends not only that the tax is levied or imposed, not upon dealers but upon the person who buys and actually uses the petroleum product for the designated statutory purpose, but, if not so, the dealer, whether a wholesaler or retailer, is not liable for the tax, unless the state shows, which was not done in these cases, the exact amount of the product sold which was thereafter so used. In ordinary cases one who sues to recover a debt must prove the amount thereof. We do not think that rule is applicable here. The defendants have not a constitutional right to deal in petroleum products. Such a business is of a character that the legislature may provide reasonable regulations for the sale, and, as here, impose an excise tax to be measured by the quantity of oil sold or used for the purpose named. Though the ultimate payment of the tax is to be made by the one who makes actual use of the product for the specified purpose, this does not, as we have seen, prevent the law making power from levying or imposing the tax upon the seller or dealer with the privilege given to the latter to protect himself by passing the tax on to the user. The one who first receives the product in this state, which he sells or offers, or holds himself out ready, to sell to a consumer, is prima facie liable for the amount of the tax upon the number of gallons so received. If it be true that some of the product is sold or offered for sale and used for some other purpose, it is incumbent upon the dealer (because he only has the power of ascertainment), if he wishes to escape liability, to show, and the burden is upon him to show, how much of the product he sells or offers to sell, is sold or used for a nontaxable use or purpose. Any other construction would enable a dealer to nullify the tax statute and prevent the state from collecting the tax. We entertain no doubt that, under the agreed statement of facts, the dealer is liable.

The vigorous argument of the defendant's counsel here

to the contrary is ingenious but we do not think it is sound. He concedes that it is competent for the lawmaking body to impose or levy such a tax upon a dealer and says that our General Assembly in amending our statute of 1919 (see Session Laws 1923, p. 474) did so. Counsel says a like result has been accomplished by the legislature of the state of Arkansas by an act, construed by the Supreme Court of that state in the case of *Standard Oil Co. v. Brodie,* 153 Ark. 114, 239 S. W. 753, in which the dealer was held liable for the tax and was also required to collect it. Our amendment of 1923, like the original statute of 1919, makes the state oil inspector and his assistants the collectors of this tax and not the dealer directly. If our 1923 statute makes the dealer liable, so does the 1919 act. The language of both acts, imposing the tax, is identical. The only material differences between the two statutes is in the amount of the tax, it being one cent per gallon under the earlier, and two cents per gallon under the later, statute, and that the 1923 statute makes it a crime or misdemeanor for a dealer to refuse to pay over a tax which he has collected, and additional remedies are provided for enforcing payment. The substance of the two acts, however, is the same in so far as concerns the levy of the tax and the persons on whom it is imposed. We repeat that this Court should long hesitate to give to our statute a construction contended for by the defendants, which would defeat its avowed purpose. Under the construction of defendants it would be impossible, as a business proposition, for the state to realize any revenue from the tax it levied. It would require an army of inspectors and collectors, at an expense far beyond the amount of the tax, to ascertain from individual buyers and users of petroleum products how much was used for the purpose designated in the tax statute. The method selected by the statute of making the dealer liable is reasonable and constitutional. It imposes no unnecessary burden or hardship upon him. He is given the power—and it is the most convenient way to collect this tax—to pass it on to the user of the product.

The machinery, under the present method, is the same as that provided for the oil inspector in inspecting oils. We must presume, as there is no complaint of its inadequacy, that thereby it is not an onerous burden to require dealers to furnish the oil inspector full information essential to an ascertainment of the amount of tax due. The dealer may protect himself. If he actually sells the product for a purpose, or the same is used for a purpose, other than that designated in the statute, he is in a position to protect himself and to furnish the necessary proof to the oil inspector, the collector of the tax. And if mistakes are made and a tax is collected from a dealer for which he is not liable, provision is made for a refund. We think our conclusion is sustained by the Arkansas case already cited; by *Pierce Oil Corp. v. Hopkins,* 264 U. S. 137, 44 Sup. Ct. Rep. 251; *Willis v. Standard Oil Co.,* 50 Minn. 290, 52 N. W. 652; and *Texas Co. v. Brown,* 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721.

We are urged in a brief filed amicus curiae to determine whether this tax is to be paid by the wholesaler or jobber, or by the retailer. We do not think we should now go any further than we have in this opinion. The defendants here are wholesalers and retailers and they have not asked us to determine which dealer, if either, is the one primarily liable. Unless and until a case is before us where such a decision is necessary, we withhold expression of opinion.

The application for supersedeas is denied and the judgment is affirmed.