[Civ. No. 10320. First Appellate District, Division One.—January 22, 1937.]

McKESSON & ROBBINS, INCORPORATED (a Corporation), Appellant, v. R. E. COLLINS et al., Respondents.

Sante Quattrin for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondents.

THE COURT.—Plaintiff sought to enjoin the state board of equalization, its officers and employees, from exercising those powers conferred upon said board by section 51 of the State Alcoholic Beverage Control Act (Stats. 1935, p. 1123) relating to the seizure and summary destruction or sale of distilled spirits unlawfully possessed or upon which the excise tax imposed by said act has not been paid. The trial court sustained defendant's demurrer to the complaint without leave to amend, and following the entry of judgment in defendants' favor plaintiff appeals.

The complaint alleged that plaintiff is a wholesaler, exporter and importer of distilled spirits, duly licensed to do business as such by said board; that on or about March 6, 1936, at Mare Island, a military reservation under the exclusive jurisdiction of the United States, and located within the boundaries of the state of California, plaintiff sold thirty gallons of distilled spirits "to a retail liquor dealer who purchased said distilled spirits for resale to consumer buyers on said military reservation"; that thereafter plaintiff at its place of business in the city and county of San Francisco prepared said distilled spirits for delivery to said purchaser, marked the same with the purchaser's name, and that the same are "now in the premises of the plaintiff in the city and county of San Francisco". Continuing, the complaint

alleged that "there is no provision in the Alcoholic Beverage Control Act of 1935 which imposes on distilled spirits sold on the military reservation an. excise tax; but that the defendants, nevertheless, have demanded of plaintiff that plaintiff pay a tax of eighty cents (80c) per gallon on the said thirty (30) gallons of distilled spirits sold as above set forth", and threaten to seize said distilled spirits if an attempt is made to remove the same from plaintiff's premises without the payment of said tax. Plaintiff asked, therefore, that defendants be permanently restrained from carrying out such threats.

■ Under the present law of this state, all sales of distilled spirits not made in conformity with the provisions of said Alcoholic Beverage Control Act are illegal; and in our opinion the trial court was justified in holding in the present case that the sales transaction alleged in the complaint constituted an illegal sale in that plaintiff was not authorized to make the same under the licenses issued to it by said board; and that such being the case equity could not be invoked to aid plaintiff in consummating an unlawful act.

■ As stated, the complaint alleged that plaintiff was licensed by said board to buy and sell distilled spirits as a wholesaler, exporter, and importer. The question of importation is not involved. As a wholesaler plaintiff was authorized to sell distilled spirits for the purpose of resale (subd. [t], sec. 2 of said act), provided delivery was "accompanied by a sufficient number of stamps purchased from the board, to stamp the packages containing such distilled spirits" (sec. 33 of said act). But, in any event, by the provisions of subdivision (f) of section 6 of said act, as such licensed wholesaler it was authorized to sell "only to persons holding licenses issued by the board . . . "; and admittedly the purchaser in the present transaction was not a licensee of said board.

With respect to the question of export sale, section 30 of said act provides in part: "None of the provisions of this act shall apply, or be construed to apply, to commerce with foreign Nations or commerce with the several States, except in so far as the same may be permitted under the provisions of the Constitution and laws of the United States . . . " But, as will be noted, in the present case the entire transaction was to be consummated within the territorial boundaries of this state.

Appellant points out that nowhere in the act is the term "export" defined; and it contends, therefore, that said term as used in said act "should be construed to apply to all shipments for delivery outside the state's jurisdiction", which, appellant argues, would cover shipments made into a military reservation within the state, over which the federal government has exclusive jurisdiction. We find no merit in this contention.

The absence of a statutory definition makes it necessary to resort to the general law upon the subject to determine the meaning of the term; and as said in Corpus Juris (vol. 25, p. 216), in its primary sense it means to carry or send out of a place; whereas in its secondary sense it means to carry from one state or a country. It would seem clear, therefore, that since the Alcoholic Beverage Control Act is a state enactment, and not an act of Congress or an ordinance of a political subdivision of the state or of a municipality, the legislature in using the term "export" intended thereby to cover only such sales as required the carrying or sending of the goods sold beyond the territorial limits of the state, and not to sales requiring delivery at places within the state, even though they are to be made on a military reservation over which the federal government had exclusive control. In other words, a military reservation entirely within the boundaries of a state is not deemed to be territory foreign to the state. (*Grayburg Oil Co.* v. *State,* (Tex. Civ. App.) 286 S. W. 489; *Grayburg Oil Co.* v. *State,* (Tex. Com. App.) 3 S. W. (2d) 427.) The cases cited involved questions of interstate commerce, but the law declared therein is particularly applicable to the present situation. It may be stated also that the judgments in those cases were subsequently nullified by the United States Supreme Court (*Grayburg Oil Co.* v. *Texas,* 278 U. S. 582 [49 Sup. Ct. 185, 73 L. Ed. 519]) upon the authority of *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218 [48 Sup. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583]; but the nullification was placed upon the ground that the state was without power to levy a tax on sales of gasoline to instrumentalities of the United States such as the Coast Guard fleet and a veterans' hospital; and the part of the decision of the Texas court with which we are here concerned was not questioned. There is no claim made here that the distilled spirits in question were pur-

chased by or for, or were to be used in connection with any instrumentality of the national government.

■ Appellant argues also that according to the allegations of the complaint the sale was initiated and concluded on a military reservation, and that therefore the demand for the payment of the excise tax amounted to an attempt to levy a state tax on personal property within a military reservation, which may not be done. Such contention cannot be successfully maintained, in view of the fact that section 6 of said act, pursuant to which plaintiff's licenses were issued, authorized plaintiff to exercise the privileges granted thereunder "and no others at the premises for which issued" (San Francisco); furthermore, according to the allegations of the complaint, the distilled spirits sold are still awaiting delivery on plaintiff's premises in San Francisco.

In any event, in view of the conclusion we have reached that plaintiff, as a licensee of said board, was not authorized either as a wholesaler or exporter to make the sale, and that consequently the sale was illegal and the injunctive relief sought not available, the question of whether the subject of the sale was taxable and the remaining points urged by plaintiff become immaterial.

The judgment is affirmed.