[Civ. No. 11908. First Dist., Div. One. Mar. 26, 1942.]

GOODERHAM & WORTS, LTD. (a Corporation), Appellant, v. R. E. COLLINS et al., as Members of the State Board of Equalization et al., Respondents.

Richard S. Goldman for Appellant.

Earl Warren, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.

KNIGHT, J.—The plaintiff, Gooderham & Worts, Ltd., sued for the refund of excise taxes paid under protest on the sale of distilled spirits. The taxes were collected by the state under the authority of the 1935 Alcoholic Beverage Control Act (Stats. 1935, p. 1123). The total amount sued for was $1694.22, but at the trial plaintiff abandoned claim to the refund of all items except $360, the amount of tax imposed and paid on the sale of 150 cases of whiskey to the Matson Navigation Company. Judgment was given for defendants, and plaintiff appeals.

By the terms of section 24 of the 1935 act an excise tax

was imposed on all distilled spirits "sold in the state"; and section 2 (1) declared that the words "sell" or "sale" and the phrase "to sell" as used in the act meant and included any of the following: to exchange, barter, traffic in; to solicit or receive an order for; to keep or expose for sale; to serve for a consideration with or without meals; to traffic in or deliver for value or in any way other than gratuitously; to possess with intent to sell; and that the transfer of title to alcoholic beverages unaccompanied by a transfer of possession of such beverages shall not be deemed a sale of such beverages. ██ The trial court found that the transaction involving the sale of the whiskey to the Matson company constituted a sale by plaintiff in this state within the meaning of the terms of said act, and that therefore the plaintiff was liable for the payment of the excise tax thereon. The evidence fully supports such findings.

It appears that at the time the sale in question was made there were two corporations bearing the name Gooderham & Worts, Ltd. One was the plaintiff, a Delaware corporation; and the other a Canadian corporation. All of the capital stock of the latter was owned by another Canadian corporation named Hiram Walker and Gooderham & Worts, Ltd., which owned also all of the capital stock of Hiram Walker & Sons Distilleries, Inc., a Delaware corporation, which in turn owned 75% of the corporate stock of the plaintiff company. Gooderham & Worts, Ltd., of Canada was a manufacturer of distilled spirits, and maintained its offices and distilleries in Walkerville, Ontario, Canada. It was not authorized to do business in California. The plaintiff company of the same name was a distributor of distilled spirits, and authorized to do business in California but not in Canada. It maintained offices and a warehouse at 144 Townsend Street, in San Francisco, and held a distilled spirits wholesaler's license and a distilled spirits wine importer's license issued by the state pursuant to section 5 of said act. In its warehouse it kept on hand for the purposes of distribution and sale a stock of distilled spirits, much of which it received from the Canadian company of the same name. The Matson company was operating ships for the transportation of passengers and freight in and out of the port of San Francisco, and was the holder, under said act, of an importer's distilled spirits license and distilled spirits retailer's licenses for specific boats.

In October, 1936, the Matson company mailed an order from its San Francisco offices to plaintiff at its place of business in

San Francisco for the purchase of 150 cases of whiskey. The order read: ''Requisition No. A-16,536. Date October 1, 1936. Gooderham & Worts, Limited, 144 Townsend Street, San Francisco, California. . . . *Delivery: 480 Main Street* . . . [Then follows the itemization of the whiskey as to quantity, grade and price.] 1. Prices f.o.b. Toronto, Canada, in bond. 2. Merchandise to move in pooled car and benefit of carlot rate to be obtained. 3. *Payment upon presentation of necessary transfer papers to our customs brokers,* H. B. Thomas & Company, San Francisco, Free of all transfer charges to purchaser. 4. . . . Vendor will supply purchaser with label approval and release if necessary to withdraw merchandise from Custom Bond. 5. Delivery as soon as possible. 6. No Federal red strip stamps are to be affixed to bottles. 7. *Our customs bonded trucks to take care of cartage at San Francisco. Merchandise to be stored at Matson Bonded Warehouse at 480 Main Street, San Francisco.* 8. No insurance charges to be borne by purchaser. 9. Free of California Excise tax as we hold California Importers License.'' (All italics ours.) Plaintiff transmitted the order to Gooderham & Worts, Ltd., of Canada at Walkerville, Ontario, and as directed in the order the whiskey was shipped in a bonded railroad car to Detroit, then placed in a pooled car with other merchandise destined for San Francisco. When the bonded car arrived in San Francisco arrangements were made by the Matson company through its customs brokers for the transfer and delivery of the whiskey to the Matson company; and thereupon the liquor was hauled from the car by a Matson company bonded truck to and delivered aboard one of its ships docked in San Francisco; and according to the stipulation of facts upon which the cause was partly tried, the whiskey was sold by the Matson company to its passengers when the ship was beyond the territorial limits of the United States. Following the delivery of the whiskey to the Matson company it paid for the same by check made out to Gooderham & Worts, Ltd., and delivered the check to plaintiff at its office on Townsend Street; whereupon plaintiff deposited the check in a bank in San Francisco in a special account of the Canadian company of the same name, and the moneys represented thereby were transmitted by the bank to the Canadian corporation.

One of the major contentions made by plaintiff is that it did not make the sale; that in fact the sale was made in Canada by the Canadian company of the same name; that plain-

tiff merely transmitted the order and received and deposited the check in behalf of the Canadian company and in doing so acted gratuitously for the Canadian company. The contention is without merit. To the contrary, the evidence shows that at the time of the sale plaintiff was engaged in business in San Francisco as a licensed wholesaler and distributor of distilled spirits and operated a warehouse in San Francisco for such purposes, and that all of the transactions relating to the sale except the actual shipment of the whiskey took place in San Francisco between the plaintiff company and the Matson company. The order for the whiskey was addressed and delivered to and accepted by plaintiff; upon the arrival of the whiskey in San Francisco arrangements for the transfer and delivery thereof to the Matson company were made with plaintiff, and upon the delivery of the whiskey to the Matson company in San Francisco payment therefor was made to plaintiff in San Francisco by check payable to plaintiff. True, one of plaintiff's San Francisco office employees testified that so far as he knew the plaintiff company made no profit out of the sale; but his testimony on this point was of little or no value because of his qualifying statement that the corporate records of the plaintiff company were not kept in the San Francisco office.

The additional major point made by plaintiff is that in any event the sale was not subject to state taxation, it being argued in this respect that the whiskey "never came to rest" within this state, and was "never within the state" except in bond in transit through the state from Canada to some point beyond the territorial limits of the United States. One of the principal factors relied upon in support of the theory so advanced is that no federal red strip stamps were affixed to the liquor, showing that no federal tax had been paid thereon; hence that it would have been in violation of the federal law to have opened and used the liquor within the territorial limits of the United States. Conceding that to be true, that is a matter which concerned only the federal government and the Matson company, and has no bearing whatever upon the controversy existing between the State of California and the plaintiff company, with which we are here concerned, namely, whether there was a delivery of the liquor free from bond to the Matson company within this state; and the evidence clearly establishes that such delivery was made at the latest the moment the liquor was removed from the bonded truck and placed aboard the company's ship

docked in San Francisco, for then and there and thereafter the liquor was in the actual and absolute possession of the Matson company and under its complete control and dominion. If as appellant seems to assume the liquor had been consigned for delivery at some designated point outside of the territorial limits of the United States and remained under government control until it was delivered at that point, a different situation would be presented. But such is not the case; the bonded car was destined for and the liquor was consigned for delivery in San Francisco and was in fact transferred and delivered to the Matson company at that point.

The remaining points made by appellant are only incidental to those already discussed and decided, and likewise are without merit.

The judgment is affirmed.

Peters, P. J., and Jones (B. C.), J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 21, 1942.