[Civ. No. 11912.   First Dist., Div. One.   Mar. 27, 1942.]

RATHJEN BROS., INC. (a Corporation), Respondent, v. R. E. COLLINS, as a Member of the State Board of Equalization, et al., Appellants.

Earl Warren, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Sefton & Quattrin for Respondent.

PETERS, P. J.—This action was brought by Rathjen Bros., Inc., to recover deficiency excise taxes collected by the

State Board of Equalization under the Alcoholic Beverage Control Act. (Stats. of 1935, p. 1123, chap. 330.) The plaintiff is a duly licensed distilled spirits rectifier and distributor engaged in business in California, and, as such, for the tax period commencing July 1, 1935, to June 30, 1937, paid to the state large sums of money under the tax statute here involved. The plaintiff operates two places of business, one in Oakland and one in San Francisco, separate books being kept for each place of business. Some time after July 1, 1937, the auditors of the board made an audit and examination of each set of books. As a result of such audits and examinations, the board determined that for the period July 1, 1935, to June 30, 1937, there was due and owing from plaintiff an additional excise tax for business done in the San Francisco office, the sum of $227.63, and for business done in the Oakland office an additional tax of $1,005.24. After such determinations the taxpayer petitioned for a relevy of the tax and demanded a hearing, which was granted. After such hearing the board determined that the above-mentioned sums were due from plaintiff. These sums were paid by the taxpayer, under protest, and this action instituted to recover the amount so paid. The trial court rendered judgment for the taxpayer for the total amount of $1,232.87. Although this is the same taxpayer involved in *Rathjen Bros., Inc.* v. *Collins*, Civ. 11911, this day decided, *ante*, p. 765 [123 Pac. (2d) 925], the main issues in the two cases are different. Case numbered Civ. 11911 involved the tax period July 1, 1937, to June 30, 1938, while the instant case involves the period July 1, 1935, to June 30, 1937. On July 1, 1937, the statute involved was amended. (Stats. 1937, p. 2126, chap. 758.) In case No. 11911 those amendments were admittedly applicable to the proceeding there pending. In the instant case, one of the problems argued is whether those amendments are applicable to this proceeding.

The appellants urge on this appeal one of the points made on the appeal in Civ. 11911, that is, that the findings in this case and the findings in the *Empire Vintage Co.* v. *Collins*, 40 Cal. App. (2d) 612 [105 Pac. (2d) 391], on all material issues are identical, and that this case must be reversed for the same reasons set forth in that case. In this case, as in Civ. 11911, the court found that the tax had been paid on all sales. It was because no such finding had been made in the Empire Vintage Co. case that the cause was reversed.

After a trial in the instant case, as to the San Francisco deficiency, the court held that as to $70.04 of that deficiency the distilled spirits represented by that item were not sold by the taxpayer to licensees but were sold to a New York corporation and delivered to a representative of that corporation; that as to $7.20 of the additional assessment the distilled spirits were sold to California licensees, but the retailer had stamps already purchased sufficient to cover the sale; that $7.68 of the additional assessment was based on three transactions; that as to the first two, the sales of distilled spirits were made while the same were in United States bonded warehouses and were sold for use on the high seas; that as to the third transaction, stamps in sufficient quantity accompanied the distilled spirits; that the balance of $142.71 of the San Francisco assessment and all of the Oakland assessment of $1,005.24 were not based on taxable sales by the plaintiff. The court did not find what happened to the distilled spirits represented by these last mentioned items.

In computing the deficiency alleged to be due from plaintiff, the board auditors proceeded precisely as they did in the other Rathjen Bros. case, Civ. 11911, that is, the auditors first determined from an examination of the books of respondent the quantity of distilled spirits possessed and acquired by respondent during the tax period; from the same source they determined the quantity of distilled spirits on hand at the close of the tax period, and the quantity disposed of in what they considered to be nontaxable transactions. All breakage claimed by respondent was allowed as a deduction. The resulting figure was adopted as the quantity of distilled spirits subject to tax. When the quantity of stamps purchased, less stamps on hand, was applied to this figure, the deficiency was computed as above-indicated. Respondent at the trial, and, on this appeal, does not challenge the above figures, except as to the gallonage disposed of in nontaxable sales which involves the several minor items above-summarized from the findings. The major portion of the deficiency is represented by unaccounted for disposals. In Civ. 11911, *supra,* it was held that under §24.2 of the act as amended in 1937 a presumption arose that such disposals had been disposed of in taxable sales, and that the burden to prove otherwise rested on the taxpayer. In the present case neither the taxpayer nor the state attempted to account for this gallonage. The state took the position that it had established a *prima facie*

case by the method above-described, and that the burden of going forward to explain the shortage rested on the respondent. The latter took the position that the tax was imposed on sales to licensees, and that the state had the burden of proving that such sales had been made before a tax could be imposed.

It is true that before July 1, 1937, there was no statutory presumption such as that contained in §24.2. The litigants spend a large portion of their argument on the question as to whether that amendment applies to taxes computed subsequent to July 1, 1937, but for a period prior to that date. We do not think that this is the deciding factor on this phase of the case. The real question is, did the respondent prove that it was entitled to a refund? The proper solution of this problem turns, in part at least, upon whether the state had any basis at all for the challenged assessment. It is elementary, of course, that in this proceeding to recover the portion of the tax paid under protest the burden of proof was upon respondent to sustain its contention that the assessment was without authority of law. (*Malley* v. *Walter Baker & Co.*, 281 Fed. 41; *Miller* v. *People*, 76 Colo. 157 [230 Pac. 603, 39 A. L. R. 269]; Annotation 39 A. L. R. 273.) When the respondent demonstrated the manner in which the board computed the assessment did it show that the assessment was without authority of law? It is our opinion that not only did the respondent fail to sustain the burden of proof, but that the board established a *prima facie* case that the tax was due. Even if the evidence showed that stamps accompanied all sales to licensees that would not be sufficient to show that the tax was not due. As was held in the Empire Vintage Co. case, *supra*, and reaffirmed in Civ. 11911, *supra*, the tax was due on all nonexempt sales, and that applies to illegal as well as to legal sales. When the board, in making its audit and examination, determined the quantity of distilled spirits possessed and acquired by the respondent during the taxable period (and that computation is concededly correct) and deducted therefrom the quantity disposed of in exempt transactions and the quantity then on hand, the state established a *prima facie* case that the balance was disposed of in nonexempt transactions. What did the respondent show to rebut that *prima facie* case? It contended the computation as to exempt sales was incorrect in certain minor particulars. Those contentions will be discussed later. It offered no proof at all

as to what had happened to the unaccounted for gallonage, and contended that before the tax could be lawfully collected from it the state had to show that the unaccounted for gallonage had been disposed of in taxable transactions. If this were the proper interpretation of the act, it would make the collection of a large portion of the tax very difficult, if not impossible. Obviously, in interpreting the act, we must assume that the Legislature intended that the tax be paid. To interpret the statute as claimed by respondent would mean that the state would have to prove a fact that rests solely within the knowledge of the taxpayer. This respondent admittedly had on hand a certain quantity of distilled spirits. Some of those spirits were sold in nontaxable transactions. Some were broken, and allowances were made for all claimed breakage. Some were disposed of and stamps accompanied the sales. But there was a large quantity unaccounted for. Obviously, the owner of those spirits has the only facilities for knowing where those spirits went. It is for these many reasons that in every case interpreting statutes imposing a tax on sales, with exemptions, the courts have held that necessarily the tax is imposed on total sales unless the taxpayer shows the sales that are exempt. (See cases collected in Annotation in 39 A. L. R. 273.)

We, therefore, conclude this portion of the opinion with the holding that, so far as the unaccounted for disposals are concerned, the respondent had the burden of showing what had become of those distilled spirits if it desired to recover the tax paid on them. The finding that the taxpayer paid all taxes collectible is unsupported by the evidence. This portion of the opinion is not based on the 1937 amendments to the act.

There are other contentions made by respondent relating to the question as to whether any tax at all was due from it. As already indicated, the tax statute here involved was first passed in 1935. The two sections primarily involved on this appeal are §§24 and 33 as enacted in that year. Section 24 then provided: "An excise tax is hereby imposed upon all distilled spirits sold in this State on and after July 1, 1935" at rates set forth in the balance of the section. In 1937 this section was amended by adding after the word "State" the words "by rectifiers or wholesalers thereof." In this case, however, we are concerned with this section as it read in 1935. Section 33, as first enacted, provided in part:

"The tax imposed by section 24 of this act upon the sale of distilled spirits shall be collected by means of attaching to each package containing such distilled spirits a stamp or stamps of a denomination equivalent to the amount of excise tax imposed upon the sale of the contents of such package. Such stamps shall be attached by the holders of on- or off-sale distilled spirits licenses issued under this act and by the holders of on-sale licenses for liquor other than beer and wine issued under the State Liquor Control Act, immediately upon opening the original cases in which the distilled spirits were packed and in which such distilled spirits were purchased from the manufacturer, rectifier, importer or wholesaler. In the case of distilled spirits not in original cases at the time of purchase the stamps shall be attached immediately upon bringing such distilled spirits upon the premises for which such on- or off-sale licenses are issued.

"Such stamps shall be sold by the board only to persons holding valid distilled spirits manufacturer's licenses, rectifier's licenses, distilled spirits and wine importer's licenses or distilled spirits wholesaler's licenses issued under this act or the State Liquor Control Act; provided, that until July 1, 1935, the board shall sell a sufficient number of such stamps, to stamp stocks of distilled spirits on hand, to persons holding valid on- or off-sale licenses for liquor other than beer and wine issued under the State Liquor Control Act; provided further, that the board may thereafter, in its discretion, sell such stamps to such holders of on- or off-sale distilled spirits licenses as it may determine.

"On and after July 1, 1935, all distilled spirits delivered by any manufacturer, rectifier, importer or wholesaler of distilled spirits to any person holding an on- or off-sale distilled spirits license issued under this act or an on-sale license for liquor other than beer and wine issued under the State Liquor Control Act, must be accompanied by a sufficient number of stamps purchased from the board, to stamp the packages containing such distilled spirits. Every manufacturer, rectifier, importer or wholesaler of distilled spirits who delivers distilled spirits in violation of this section shall be guilty of a misdemeanor. . . .

"At the time such stamps are attached to the packages of distilled spirits, they shall immediately be canceled by indelibly writing or stamping thereon the number of the licensee attaching the stamp and the date of cancellation."

By an amendment to §27 of the act in 1937 the board was

expressly authorized to levy deficiency assessments against wholesalers who failed to pay the full amount of their tax and to collect the same.

As passed in 1935, the general plan of the statute was that the wholesaler was required to buy the tax stamps from the board; such wholesaler was then required to accompany all sales to nonexempt transferees with the requisite number of stamps; the purchaser upon opening the case was then required to attach the stamps to the bottles and to cancel the same.

Respondent urges, in support of the judgment, that, under the statute as it read until the effective date of the 1937 amendments, the taxpayer was the purchaser, and that the wholesaler was not the taxpayer at all. Respondent argues that its license could be canceled for failure to accompany sales with stamps, but urges that it was not made liable for the tax until the 1937 amendment to §24. It urges that §24, as it read in 1935, does not state that the tax is imposed on the wholesaler. In support of this contention it relies on certain language appearing in the case of *People* v. *Tux Winery Co.*, 20 Cal. App. (2d) 700 [67 Pac. (2d) 752]. The sole problem involved in that case was whether a sale from one wholesaler to another wholesaler was taxable. The court properly held that such sales were exempt—that it was the sale from wholesaler to retailer that was taxable. In support of this holding it pointed out that the tax was not finally collected until the retailer affixed the stamps to the bottles. The court stated (p. 704): "While it is true that the money is paid when the stamps are purchased; nevertheless the stamps may be used for the liquor involved or they may be used to evidence the tax on other liquors, and so for all practical purposes the tax is not collected until the stamps are attached to specific packages." This was not a holding that the tax was not collectible from the wholesaler. That point was not involved nor discussed in the case.

A reading of the provisions of the 1935 act demonstrates that either the taxpayer was the wholesaler, who prepaid the tax and reimbursed himself from the retailer, or the wholesaler was the agency designated by the act to collect the tax on behalf of the state from the actual taxpayer. In either event the wholesaler is liable for the amount of the tax. The most reasonable interpretation of the act is that it is the wholesaler who was made the taxpayer. The wholesaler, in

all but exceptional cases, under §33, was the one who actually bought the stamps from the state, and distributed them to retailers. The courts have consistently held, in such cases, that it is the one who pays the state that is the taxpayer. Thus, under the sales tax act, there was much more reason than exists under the statute here involved to hold that it was the consumer who was the taxpayer and that the retailer was only the agent for collection. The Supreme Court properly held that the retailer was the taxpayer. (*De Aryan* v. *Akers,* 12 Cal. (2d) 781 [87 Pac. (2d) 695].) But, even if the wholesaler was merely the statutory agent for collection it would be liable for failure to collect and pay over the tax. (*State of California* v. *Poulterer,* 16 Cal. 514; *Miller* v. *People, supra.*) It should also be mentioned that in the Empire Vintage Co. case, *supra,* it was expressly held that the tax was due from the wholesaler. (See, also, *McKesson & Robbins, Inc.* v. *Collins,* 18 Cal. App. (2d) 648 [64 Pac. (2d) 469].)

Respondent next urges that prior to 1937 there was no provision for collecting the tax, and certainly no provision for deficiency assessments. In the Empire Vintage Co. case, *supra,* at p. 619, the court, in response to somewhat similar contentions, held: "Again the plaintiff contends the board could not collect the alleged deficit except by making a reassessment and that under the act of 1935 it was not given power to reassess. That it was not given power to reassess is true. But bearing in mind we are dealing with an excise tax, it is obvious no assessment or reassessment is involved. Section 24 in effect was both the assessment and levy of the tax. (*Dollar Sav. Bank* v. *United States,* 86 U. S. 227, 240 [22 L. Ed. 80].) He who would object to the amount of the tax was bound to present his objection to the legislature having said section under consideration. Finally the plaintiff contends that under the statute no provision is made for collecting a deficiency tax. It says the following questions must be answered: 'From whom? Under what procedure? Was there a deficiency in this case?' Of course, the answers are immediately at hand. The tax is to be collected from the wholesaler, this plaintiff (sec. 33). It is to be collected under the procedure hereinabove indicated and the amount of the deficiency is to be ascertained as the board ascertained it in the present case. Bearing in mind that the act of 1935 was a revenue act, that the very gist of it was to collect revenue, and that efficiency was of the utmost importance, the record presents no serious questions. The statute makes no distinc-

tion between acts whether past or present. It provides one procedure. It is not even claimed that such procedure is not fair and just. The same procedure applies whether there is one violation or several violations of the statutory duty to collect and pay over the tax imposed. These conclusions find complete support in *State Board of Equalization* v. *Superior Court*, 5 Cal. App. (2d) 374 [42 Pac. (2d) 1076].''

It is true, as urged by respondent, that in the Empire Vintage Co. case, the procedure adopted was to determine the deficiency, as was done in the instant case, and then to proceed against the wholesaler by way of complaint to suspend or revoke its license for failure to deliver the tax stamps with all taxable sales. However, the same reasoning is applicable. As held in that case, this is an excise tax. Section 24 imposed the tax, and no assessment or reassessment was necessary to create the liability or to make the taxpayer personally liable therefor. (*Dollar Sav. Bank* v. *United States, supra; United States* v. *Chamberlin,* 219 U. S. 250 [31 S. Ct. 204, 55 L. Ed. 204].) Moreover, even if the power to assess a deficiency did not exist until 1937, the provision giving to the board that power would apply to liabilities existing prior to the effective date of the statute. The tenor of the respondent's argument is that although it owed the tax the procedure followed to collect it was not proper. Even if a taxpayer could urge impropriety of the procedure adopted by the state to collect a due tax after the tax has been paid and in an action to recover the tax, which is doubtful, it has been settled in this state from an early date that legislation providing a new and additional procedure for the enforcement of a pre-existing tax liability enacted subsequent to the time the tax should have been paid is valid and proper. (*People* v. *Seymour,* 16 Cal. 332 [76 Am. Dec. 521] ; *Moore* v. *Patch,* 12 Cal. 265 ; see, also, *Roth Drug, Inc.* v. *Johnson,* 13 Cal. App. (2d) 720 [57 Pac. (2d) 1022].) Under any one of these various theories the arguments advanced by respondent in this issue are unsound.

This disposes of the main points urged by respondent. In addition, however, it urges that the evidence supports the findings that certain of the transactions included within the deficiency were in fact tax exempt as found by the trial court. These transactions fall into the following classifications:

A. The trial court found in reference to the San Francisco assessment, that distilled spirits represented by $70.04 of the assessment were not sold by the respondent to on- or

off-sale licensees and never received by such licensees, but "were sold to a corporation located in the State of New York not licensed as an on- or off-sale retail distilled spirits licensee in the State of California and delivered to a representative of said corporation." According to the evidence, the facts in reference to this item were that respondent sold the distilled spirits to a distilled spirits dealer doing business in New York, but not licensed in California, and delivered the same to the New York company's salesman in California. Apparently these distilled spirits were to be used by the salesman in California as samples. The respondent had purchased liquors from the New York company, and received payment for these liquors delivered to the salesman in California by debiting its account with the New York company. Thus, there was a sale in California to a non-licensee, and the liquor left the control of respondent in California. Apparently it was the theory of the trial court, and it is the theory of respondent, that only sales to on- or off-sale retail licensees were taxable. That point has been disposed of adversely to the contentions of respondent in the Empire Vintage Co. case, *supra*, and re-affirmed in Civ. 11911, *supra*. ▆ Every sale of distilled spirits in California is subject to the tax unless the sale is exempt. ▆ The burden of showing that a particular sale is exempt rests on the taxpayer. It should be noted that this was not a sale between respondent, as a wholesaler, to the New York company as a wholesaler within the meaning of *People* v. *Tux Winery Co.*, 20 Cal. App. (2d) 700 [67 Pac. (2d) 752]. The rule of that case applies only where the purchasing wholesaler uses the purchased distilled spirits for resale. The burden to show that rested on respondent. The respondent, having failed to sustain the burden resting upon it as to these sales, is not entitled to a refund.

▆ B. *Sales to Steamship Companies.* One of the items of the additional assessment levied on the San Francisco office of respondent amounting to $7.68, represented the tax on sales made to steamship companies. The trial court found that this sum was made up of three items. As to two of these sales the court found they were made while the distilled spirits were in a bonded warehouse and were sold for use on the high seas, and that as to the third sale the requisite tax stamp accompanied the delivery. It was the theory of the trial court that since this liquor was in a bonded warehouse its sale was not subject to tax. That factor has no relevancy to the issue.

The sale was in California and delivery was made to the purchaser in San Francisco. The respondent had no further control of the merchandise after it was delivered in San Francisco. Respondent in no sense exported these distilled spirits. These points have been fully considered and passed upon in the case of *Gooderham & Worts, Ltd.* v. *Collins,* Civ. 11908, *ante,* p. 716 [123 Pac. (2d) 922]. As there held, and for the reasons there stated, this type of sale is subject to the tax.

As to the third item on which the stamps accompanied delivery, this transaction should not have been included in the additional assessment. On the retrial, this item should be fixed as to amount and an allowance made to respondent.

C. The auditors for the board found that certain sales made to retail licensees in admittedly taxable transactions on which the tax totaled $7.20 had not been accompanied by stamps at the time of delivery. During the trial the respondent expressly waived this item. Nevertheless, the trial court found that the board had no information that such liquor had been sold to, or received by, retail licensees, and, secondly, that the retail licensees purchased stamps for such liquor from other sources. The first part of the finding is based on a misconception of the law. As already held, the burden to show that the sales were nontaxable rested on respondent. As to the second part of the finding, neither litigant has seen fit to refer to the record where the evidence, if any, on this issue may be found. If supported by the evidence, obviously the respondent is entitled to a refund of the additional tax paid for this item. This may be clarified on the retrial.

For the foregoing reasons the judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 25, 1942. Gibson, C. J., and Traynor, J., did not participate therein. Spence, J., acted pro tem.