[Civ. No. 11958. First Dist., Div. One. Mar. 27, 1942.]

TONKIN DISTRIBUTING COMPANY, INC. (a Co-partnership), Respondent, v. R. E. COLLINS as a Member of the State Board of Equalization, et al., Appellants.

Earl Warren, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Sefton & Quattrin for Respondent.

PETERS, P. J.—This action was brought by Tonkin Distributing Co., Inc., a partnership, to recover deficiency excise taxes collected by the State Board of Equalization under the Alcoholic Beverage Control Act. (Stats. 1935, p. 1123, chap. 330; Deering's Gen. Laws, 1937, Act 3796.) The plaintiff during the period December 30, 1935, to June 30, 1937, was a duly licensed wholesaler, rectifier and importer engaged in business in California and, as such, for the year and a half period paid to the state large sums of money under the tax statute here involved. Some time after

July 1, 1937, the auditors of the board made an audit and examination of the books and records of the plaintiff. As a result of this audit and examination the board determined that for the year and a half in question there was due and owing from plaintiff an additional tax of $554.27. The plaintiff thereafter petitioned for a relevy of the tax and demanded a hearing, which was granted. The board thereafter determined that the above-mentioned sum was due from plaintiff. This sum was then paid by the plaintiff under protest, and this action instituted to recover the amount so paid. The trial court rendered judgment for the taxpayer for the total amount of $554.27. In addition to general findings the trial court made detailed findings concerning the respective items making up the total of the judgment. One of the theories of the trial court, and it so found, was that prior to July 1, 1937, there was no provision of law authorizing the proceedings taken by the board against plaintiff.

On this appeal many of the points discussed are identical with those raised in the two Rathjen Bros. cases, Civ. 11911, *ante,* p. 765 [123 Pac. (2d) 925], and Civ. 11912, *ante,* p. 774 [123 Pac. (2d) 930], and in *Sauers Wholesale Co.* v. *Collins,* Civ. 11959, *ante,* p. 786 [123 Pac. (2d) 936]; in fact, by stipulation the cases have been submitted on the same briefs. No useful purpose would be served by repeating what was said in those three cases. For the reasons therein set forth it is obvious that the judgment here appealed from must be reversed.

The total alleged deficiency amounted to $554.27. This was made up of the following six items:

1. Sales to retail licensees unaccompanied by stamps ....................................$ 26.18
2. Sales to steamship companies............... 8.44
3. Sales to non-licensees....................... 396.30
4. Samples ................................. 35.47
5. Return of stamps from retailers............. 2.64
6. Unaccounted for disposals................. 85.24

*Item One—Sales to retail licensees unaccompanied by stamps—total tax liability $26.18.*

This item involves nine different transactions. All transactions here involved were with retail licensees and were admittedly taxable. As to three of the transactions, on which

the total tax was forty-eight çents, the trial court found that they involved "the replacement of broken distilled spirits bottles previously sold to retailers with deliveries of sufficient tax stamps to stamp properly said distilled spirits." The trial court did not find whether the breakage occurred before transit had ended and before the stamps were affixed, or whether the breakage occurred after the stamps were affixed by the retailer. If the stamps were affixed, the subsequent breakage would not affect the liability for taxes on the broken bottles, and the subsequent replacements should have been accompanied by stamps. (*Three G Distillery Corp.* v. *Johnson,* 39 Cal. App. (2d) 431 [103 Pac. (2d) 429].) But if the cases had not yet been broken the wholesaler may properly replace the broken goods and the stamps sent with the first shipment may be used to pay the tax.

As to the fourth and fifth transactions, with a total tax liability of $19.30, the court found each of the sales was accompanied by a sufficient number and amount of stamps. The evidence supports the finding, and as to this item the taxpayer is entitled to a refund.

As to the sixth transaction, with a tax liability of $1.92, the court found that the proper quantity of stamps were delivered to the retailer, but were returned because the retailer had on hand a sufficient number of stamps purchased from another wholesaler. Under the ruling in the case of *Sauers Wholesale Co.* v. *Collins,* Civ. 11959, *ante,* p. 786 [123 Pac. (2d) 936], on this same issue this particular sale was not taxable to respondent. The respondent was entitled to a refund on this item.

As to the remaining three items, the court found that the board had no evidence that the transactions were taxable. This finding is based on an incorrect theory. The burden was on the respondent in this proceeding to show that the transactions were exempt. It did not sustain this burden.

*Item Two—Sales to Steamship Companies—total tax liability $8.44.*

This item was made up of eight separate transactions. As to one of them, on which the tax amounted to $2.40, the court found a sufficient quantity of stamps accompanied delivery. As to this item the respondent is entitled to a refund.

As to the second and third transactions, on which the tax liability was seventy-two cents, the court found that the dis-

tilled spirits were not intended for beverage use. There is no exemption in the act for sales of distilled spirits capable of being used for beverage purposes where the purchaser represents they are to be used for a nonbeverage purpose. The respondent is not entitled to a refund of this item.

As to the remaining five transactions, they involved situations identical with those present in Civ. 11912, *ante,* p. 774 [123 Pac. (2d) 930] and in *Gooderham & Worts, Ltd.* v. *Collins,* Civ. 11908, *ante,* p. 716 [123 Pac. (2d) 922]. For the reasons there set forth, these transactions were taxable. The evidence shows without conflict that these sales were completed by respondent in California. Full control over the distilled spirits passed to the purchaser in California.

██ 3. *Sales to Non-Licensees—total tax liability $396.30.*

As to this item the findings of the trial court are not entirely clear. It was found that the distilled spirits represented by this portion of the assessment were not sold for resale in California, but were actually exported from California and delivered for resale or consumption outside California. Some of the transactions involved actual deliveries to the purchaser's agent in California. If control of the liquor passed to the purchaser or his agent in California the transaction is taxable for the same reasons set forth in the discussion of sales to steamship companies. By section 30 of the act as passed in 1935 it was provided:

"None of the provisions of this act shall apply, or be construed to apply, to commerce with foreign Nations or commerce with the several States, except insofar as the same may be permitted under the provisions of the Constitution and laws of the United States . . .

"In support of any exemption from excise taxes claimed under this section on account of the exportation of alcoholic beverage every manufacturer must execute an export certificate in such form as shall be prescribed, prepared and furnished by the board containing a sworn statement made by some person having knowledge of the fact of such exportation that the alcoholic beverage has been exported from this State, and giving such detail with reference to shipment as said board may require. All exportation certificates must be completed and on file in the office of the board within thirty days after the close of the calendar month in which the shipments were made and no certificate not completed and filed

within such period shall be recognized for any purpose by the State or any agency thereof. The board may demand of any manufacturer or importer such additional data as is deemed necessary by said board in support of any such certificate and failure to supply such data will constitute waiver of all right to exemption claimed by virtue of said certificate." The last paragraph of the section deals with how this exemption must be claimed. There is no finding as to whether compliance was had with these requirements. The burden was on respondent to show that the sale was exempt. This matter may be clarified by proper evidence and findings on the new trial.

###### █ *4. Samples—total tax liability $35.47.*

As to this item the trial court found that the distilled spirits involved "were given away as donations or samples without any consideration of any kind being given to the plaintiff for the same; and I further find that said distilled spirits were not given away in connection with the sale of any distilled spirits." This case, unlike the problem present in Civ. 11912, *supra,* and in the Sauers Wholesale Co. case, Civ. 11959, *supra,* involves samples directly given away by the wholesaler, rather than sales of liquor to another to be used by the purchaser for samples. By board rule it is provided that such samples must be accompanied by stamps. The question as to whether samples given away by wholesalers must be accompanied by stamps is not an easy one. By section 24 of the act the tax is imposed on "distilled spirits sold" in California. Section 2 (1) defines the terms "sell" or "sale" or "to sell" very broadly, and, among other things, provides that the terms shall include: "to traffic in or deliver for value or in any way other than gratuitously." Sections 33 and 34 require the stamping of all distilled spirits not on the premises of licensed manufacturers, wholesalers, etc., and under section 51 all unstamped distilled spirits found outside the premises of licensees were made subject to seizure and forfeiture or destruction. Obviously, the use of samples is for the purpose of encouraging the sale of the product. For that reason such transfers are not, in the true sense, gratuitous. Under these circumstances, we think the board acted within its rule-making power in adopting the rule requiring stamps to be attached to samples. These transactions were therefore taxable.

■ *5. Return of Stamps from Retailers—tax liability $2.64.*

As to this item the trial court found that the assessment was "based on excise stamps returned from retailers to the plaintiff because the plaintiff had originally, in selling the distilled spirits involved, sent too many stamps with said distilled spirits." Obviously, if the wholesaler sends too many stamps for the purchase made, when the stamps are returned the wholesaler is entitled to a credit. The respondent was entitled to a refund on this item.

*6. Undisclosed disposals—tax liability $85.24.*

The problems here presented are identical with those presented in Civ. 11912, *ante,* p. 774 [123 Pac. (2d) 930], and Civ. 11959, *ante,* p. 786 [123 Pac. (2d) 936]. For reasons there set forth the findings in reference thereto are not supported by the evidence.

For the foregoing reasons the judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 25, 1942. Gibson, C. J., and Traynor, J., did not participate therein. Spence, J., acted pro tem.