[Civ. No. 16538.   First Dist., Div. Two.   May 21, 1956.]

NATIONAL DISTILLERS PRODUCTS CORPORATION (a Corporation), Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Appellant.

Brobeck, Phleger & Harrison for Respondent.

DOOLING, J.—This is an appeal by defendant city and county of San Francisco from a judgment of the superior court ordering it to refund certain personal property taxes paid under protest by plaintiff National Distillers Products Corporation.

Respondent is a Virginia corporation qualified and entitled to do business in the State of California.   It is engaged in business as an importer, exporter, manufacturer and distributor of wines, liquors, and other alcoholic beverages.   In the course of this business it manufactures, and purchases from and sells to manufacturers, wholesalers, dealers and

distributors located in various states of the United States and in various countries of the world, the merchandise required for and involved in the conduct of its business. On the first Monday of March, 1952, tax day, it owned and possessed in warehouses in San Francisco certain quantities of liquor upon which appellant levied and collected an ad valorem personal property tax. Respondent paid the portion of the tax assessed against the liquor here in question under protest, and then instituted this action to recover that tax, claiming that this liquor was exempt from state taxation.

Respondent had judgment against appellant for $9,831.45 plus interest from the date that the disputed tax in this amount was paid. Four thousand seven hundred and eight dollars and ninety-two cents of this sum represented a tax assessment against 5,281 cases of liquor which had been imported by respondent from foreign countries and held by it in San Francisco as the original importer and in the original package on the tax day. As to this liquor it is conceded that the tax was properly recovered under the authority of *Parrott & Co.* v. *City & County of San Francisco,* 131 Cal.App.2d 332 [280 P.2d 881].

The remainder of the disputed tax in the amount of $5,122.53 was assessed with respect to 9,195 cases of liquor owned and possessed by respondent in warehouses in San Francisco on assessment day. This liquor had been delivered to the San Francico warehouses on various dates, starting with June 28, 1948. As to this liquor the trial court found: ''Two thousand seven hundred six (2,706) cases of said spirits had been rectified, reduced in proof, and bottled in a United States customs bonded warehouse, Class 6, in Baltimore, Maryland; stamped, packaged, and labeled for export; immediately thereafter transported by bonded common carrier to San Francisco; and there held under United States customs bond in a Class 3 customs bonded warehouse. One thousand two hundred eight (1,208) cases of said spirits had been bottled in Baltimore, Maryland, under internal revenue bond; stamped, packaged, and labeled for export; immediately thereafter transported by bonded common carrier to San Francisco; and there held under internal revenue bond in a public warehouse. Five thousand two hundred eighty-one (5,281) cases of said spirits had been bottled, stamped, packaged, and labeled especially for export in Baltimore, Maryland; immediately thereafter transported by bonded common carrier to San Francisco; and there held in the export storage

room of a public warehouse, subject to a drawback or refund of previously paid internal revenue taxes upon proof of export in accordance with appropriate federal regulations. All of said spirits were produced, bottled, packaged, labeled, stamped, and transported to California, and thence aboard ship for transportation to destinations in foreign countries or use as supplies of vessels in accordance with applicable federal laws and regulations and under the supervision and control of appropriate federal government agencies."

As of September 1, 1953, 614 cases of this liquor were still in San Francisco warehouses. "At various times after March 3, 1952, 43 cases of said 9,195 cases of distilled spirits in United States customs bond were, while in bond, sold and placed aboard vessels, and used as supplies of vessels of the United States actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and its possessions, and two cases of spirits in United States customs bond, while in bond, were sold and placed aboard vessels, and used as supplies of vessels of the United States employed in the fisheries on the high seas; of said 45 cases of spirits aforesaid, 20 cases were sold directly to the owners of and delivered to said vessels, and 25 cases were sold to a concern in San Francisco doing business as a ship chandler—which concern thereafter sold said 25 cases for delivery to the owners and to said vessels. At various times after March 3, 1952, the remainder of said 9,195 cases of distilled spirits were sold and placed aboard vessels and transported to customers and destinations in foreign countries."

There was testimony that under the federal regulations it was not possible to sell any of this liquor domestically. Mr. Carl P. Greely, assistant general traffic manager of respondent having control and supervision over all imports, exports and domestic shipments for respondent and its subsidiaries and affiliated companies, testified that he knew of no case in which respondent had sold liquor of the type here in question domestically. He stated that the reason for this was that first it would be necessary to secure permission from the Commissioner of Internal Revenue in Washington and prove a hardship case in order to do so. Further, he testified that it would not be financially feasible to do such a thing as it would require new packaging, bottling, labeling, and would also result in the payment of an internal revenue tax on 14 per cent of the contents which would be water rather than liquor

because of the difference in proof between the liquor sold domestically and that designed for export.

The court found that "the production, transportation to San Francisco, detention in a public warehouse, and movement aboard vessels under bond for delivery to customers and destinations in foreign countries or consumption on the high seas constituted integrated steps in a movement of goods in interstate and foreign commerce in the process of shipment either to foreign destinations or for consumption aboard vessels on the high seas, in accordance with plaintiff's plan and intent."

The court concluded that this liquor "constituted items in foreign commerce over which the federal government has exercised its power of regulation and control to the end that such distilled spirits may be sold or otherwise disposed of for transportation to destinations in foreign countries or sold for use as supplies for specified vessels of the United States free of the burden of domestic taxation. The statutes and regulations applicable to these spirits taken together operate as regulations of foreign commerce; and read in the light of their purpose they are tantamount to a declaration that in order to accomplish constitutionally permissible ends the merchandise shall not become a part of the common mass of taxable property within the state, pending its disposition in the manner above specified, and shall not become subject to the state taxing power. The purposes of the Congressional regulation applicable to this phase of foreign commerce would fail if the state were free at any stage of the transaction to impose a tax which would lessen the competitive advantage conferred by Congress upon the said spirits or infringe on the Congressional regulation of this class of foreign commerce." Thus it further concluded that the personal property taxes were illegally and unconstitutionally assessed and collected by appellant from respondent.

At the trial respondent contended, as it does on appeal also, that the tax imposed on the liquor to be exported or sold as ships' stores was unlawful under both article I, section 8, clause 3 of the United States Constitution (commerce clause) and article I, section 10, clause 2 of that Constitution (import-export clause). The trial court agreed with respondent as to its first contention and therefore did not decide on the merits of its second argument.

Appellant first argues that the levy of the personal property tax here sought to be imposed was not an interference

with the federal regulation of foreign commerce. The trial court based its decision to the contrary on *McGoldrick* v. *Gulf Oil Corp.*, 309 U.S. 414 [60 S.Ct. 664, 84 L.Ed. 840]. In that case the city of New York sought to impose a sales tax on fuel oil manufactured in New York City from crude petroleum which had been imported from a foreign country to New York and there sold to vessels engaged in foreign commerce. Gulf Oil Corporation's predecessor imported crude petroleum and made customs entry of it for its own manufacturing warehouse pursuant to its bonds given to the United States under the warehouse laws of the United States and treasury regulations. The bonds were given for the purpose of enabling the importer, under statutes of the United States and treasury regulations, to bring the petroleum into the United States to manufacture it while in bond into fuel oil and then to withdraw it for export or other lawful purpose free of the import duty which would otherwise be payable. The bonds were conditioned upon compliance with laws and regulations relating to the custody and safekeeping of the imported merchandise and its products held in bond, and to its lawful withdrawal from the warehouse under permit of the collector of the customs. The court reviewed in detail the provisions of the Revenue Act of 1932 laying a tax on the importation of crude petroleum and granting exemptions, the related provisions of the Tariff Act of 1930, and the applicable treasury regulations, and concluded that taken together they operated as regulations of foreign commerce. It then held that the tax sought to be imposed conflicted with the congressional policy adopted by the acts of Congress to relieve the importer of the import tax so that he might meet foreign competition in the sale of fuel as ships' stock. The court stated: "It is evident that the purpose of the Congressional regulation of the commerce would fail if the state were free at any stage of the transaction to impose a tax which would lessen the competitive advantage conferred on the importer by Congress, and which might equal or exceed the remitted import duty . . . (citations) . . . The Congressional regulation, read in the light of its purpose, is tantamount to a declaration that in order to accomplish constitutionally permissible ends, the imported merchandise shall not become a part of the common mass of taxable property within the state, pending its disposition as ships' stores and shall not become subject to the state taxing power. The customs regulation prescribing the exemption from state taxation, when

applied to the facts of the present case, states only what is implicit in the Congressional regulation of commerce presently involved. The state tax in the circumstances must fail as an infringement of the Congressional regulation of the commerce."

The instant case seems to present a situation that is clearly within the rationale of the Gulf Oil case. Sections 309, 311 and 313 of the Tariff Act of 1930, as amended (tit. 19 U.S.C.A., §§ 1309, 1311 and 1313) provide freedom from internal revenue taxes or for a drawback of taxes paid, when the required procedure is followed for domestic liquors exported, used as ships' stores, or sold to vessels employed in the fisheries. These provisions would seem to constitute regulations of foreign commerce in the instant case just as similar provisions did in the Gulf Oil case. Certainly the purpose of this regulatory scheme is to encourage commerce and give a competitive advantage to these items. If states or their political subdivisions were allowed to impose taxes on these items an interference with this purpose would result.

Appellant seeks to distinguish the Gulf Oil case by pointing out that in that case the items sought to be taxed were manufactured from imported materials, while here the liquor was of domestic origin. Its position is that that case was decided exclusively on the ground that the laying of import duties was a regulation of foreign commerce and that the exemption from import duties was similarly a regulation of foreign commerce. It maintains that since the instant case involves intoxicating liquors subject to internal revenue tax levied under the taxing power, the only federal power here exercised is the taxing power. It argues that therefore there can be no exercise of the commerce power in this situation. There seems to be little merit to this contention. The Tariff Act of 1930, as amended, provides exemptions for both types of items in particular cases. There is no reason to assume that the exemption in one case would be a regulation of foreign commerce and in the other an exercise of the power to tax. This is especially true since the sections involved do not deal with the imposition of a tax, but rather with a declaration that no tax shall be imposed.

Appellant argues that the purpose of the strict governmental regulations under which the liquor is held is to prevent the diversion of the liquor to the domestic market without the payment of the internal revenue tax. It seems obvious that this is one of the purposes of these regulations.

However, this does not necessarily mean, as appellant seems to imply, that these regulations constitute an exercise only of the taxing power to the exclusion of the commerce power. The Gulf Oil case indicates that appellant's position on this point is not well taken. The court in that case stated: "Customs regulations to insure the devotion of the imports to the intended use are likewise within the Congressional power since such regulations are not only necessary or appropriate to protect the revenue, but are means to the desired end; the regulation of foreign commerce by insuring that the particular class of exempted imports are used for the purposes for which the exemption is allowed." (309 U.S. at p. 428.)

Likewise pertinent is the language of the Supreme Court in *Board of Trustees* v. *United States*, 289 U.S. 48, 58 [53 S.Ct. 509, 77 L.Ed. 1025], that: "the judicial department may not attempt in its own conception of policy to distribute the duties thus fixed by allocating some of them to the exercise of the admitted power to regulate commerce and others to an independent exercise of the taxing power. The purpose to regulate foreign commerce permeates the entire congressional plan." We are satisfied that it is equally true of the congressional legislation before us that the purpose to regulate and encourage commerce "permeates the entire congressional plan."

Appellant argues that the liquor here sought to be taxed was "at rest" in San Francisco on tax day and was then part of the general mass of personal property subject to taxation. It contends that there were two shipments of this liquor: (1) an interstate shipment to San Francisco which was completed, and (2) a subsequent shipment in foreign commerce as to liquor which was exported. It argues that the storage of these goods in San Francisco constituted such a break in their transit as to remove them from the protection of the commerce clause. The cases relied on by it to support this phase of its argument deal with factual situations in which goods are immune from local taxation by reason of the fact that they are being shipped in interstate commerce. When this shipment is either ended or interrupted at the convenience of and because of the wishes of the shipper, then the goods are said to have "come to rest" and are subject to local taxation. (*Minnesota* v. *Blasius*, 290 U.S. 1 [54 S.Ct. 34, 78 L.Ed. 131].) However, in the instant case the goods are not immune from local taxation because they had been traveling in interstate commerce. Rather, under the

rationale of the Gulf Oil case, they derive their immunity from local taxation under the commerce clause by reason of the fact that the federal government has regulated their manufacture, transportation, storage, and exportation in furtherance of commerce, and that such taxes would constitute an interference with that regulation.

Appellant relies on *Gooderham & Worts, Ltd.* v. *Collins,* 50 Cal.App.2d 716 [123 P.2d 922], and *Rathjen Bros.* v. *Collins,* 50 Cal.App.2d 774 [123 P.2d 930], for the proposition that "California courts have held liquor to be ships' stores, subject to the state's taxing power." In the Gooderham case the court upheld a sales tax imposed on a distributor of distilled spirits on a sale of liquor to the Matson Navigation Company. No federal tax had been paid on this liquor. The court found that there was a delivery of the liquor free from bond to the Matson Company within the state and held that this constituted a taxable event within the meaning of the statute. The court further said: "If as appellant seems to assume the liquor had been consigned for delivery at some designated point outside of the territorial limits of the United States and remained under government control until it was delivered at that point, a different situation would be presented." The instant case would seem to present a "different situation" than that discussed in the Gooderham case. Here the liquor sought to be taxed was still under federal government control when the tax was imposed. There had been no sale of it at that time.

In the Rathjen case the court upheld a sales tax imposed on the sale of distilled liquors to steamship companies. The trial court found that two of these sales had been made·while the distilled spirits were in a bonded warehouse and decided that these sales were not subject to tax for this reason. The appellate court disagreed, saying: "That factor has no relevancy to the issue. The sale was in California and delivery was made to the purchaser in San Francisco. The respondent had no further control of the merchandise after it was delivered in San Francisco. Respondent in no sense exported these distilled spirits. These points have been fully considered and passed upon in the case of *Gooderham* . . . As there held, and for the reasons there stated, this type of sale is subject to the tax." This case does seem to go further than the Gulf Oil case in allowing local taxes to be imposed on items that have been subjected to federal control. However, in both the Gooderham and the Rathjen cases the court

seems to base its decision on the fact that the federal control had ceased when the state tax was imposed. In the instant case that control was still in force when the personal property tax was imposed.

Furthermore if there is anything in these California cases in conflict with the Gulf Oil case it is obvious that the Gulf Oil case must control.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 18, 1956.