

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

June 1, 1971

Honorable O. N. Humphreys, Jr.
Administrator
Texas Alcoholic Beverage Commission
P.O. Box 13127, Capitol Station
Austin, Texas   78711         Opinion No.   M-877

                              Re:   Whether vendors selling beer
                                    from ships' chandlerage under
                                    United States Customs Bond
                                    are subject to provisions of
Dear Mr. Humphreys:                 the Texas Liquor Control Act.

        Your request for an opinion on the captioned subject
presents three questions.

        The first question presented inquires as to your Commis-
sion's authority, if any, to enforce pertinent provisions of
the Texas Liquor Control Act against a vendor selling beer
from ships' chandlerage* under United States Customs Bond
when such vendor holds no license or permit issued by the
Texas Alcoholic Beverage Commission.

        The second question presented inquires as to the Board's
authority, if any, to enforce pertinent provisions of the
Texas Liquor Control Act against a vendor selling beer from
ships' chandlerage under United States Customs Bond when such
vendor holds a valid license or permit issued by the Texas
Alcoholic Beverage Commission.

        The third question presented assumes that the vendors in
the first and second questions are subject to regulation under
the Texas Liquor Control Act, and inquires as to whether the
Commission may strictly regulate or even prohibit the activi-
ties of such vendors because of the substantial practical

---

        *"Ship Chandler - A Dealer in supplies and equipment for
ships."   Webster's Third New International Dictionary (Unabridged
Ed. 1969).

difficulties which the Commission faces with respect to en-
forcing state liquor laws as they may pertain to the sales
in question.

Your request presents only limited facts and it is not
accompanied by a copy of the regulations and procedures of
the United States Bureau of Customs under which the specific
vendors in question purport to operate.  For the purpose of
this opinion, we will assume that all of the beer in question
has been brewed and placed in containers in a brewery operated
under internal revenue supervision and bond; that the con-
tainers have been clearly stamped and labeled for export with-
out payment of federal taxes at the brewery; that they have
been transported into the State of Texas by a carrier bonded
to and under the supervision of appropriate agencies of the
Federal government; and that once the beer reaches the state
it is continuously held in facilities which are bonded to and
under the supervision of federal authorities until placed
aboard ship (for transportation to destinations in foreign
countries, Hawaii, Alaska, or the possessions of the United
States; or for the use as ships' supplies).  A comprehensive
statutory and administrative regulatory scheme is provided
for this purpose by federal law, and at all steps in the trans-
fer from brewery to ship, and until the beer reaches its des-
tination at a foreign port, if so consigned, the beer in
question would under the federal regulatory scheme, be subject
to close supervision by federal agents.

Pertinent statutory provisions, are in part, as follows:

"26 U.S.C. §5092.  Definition of brewer

"Every person who brews or produces beer for
sale shall be deemed a brewer."

"26 U.S.C. §5401.  Qualifying documents

". . .

"(b)  Bonds. - Every brewer . . . shall execute
a bond to the United States . . . conditioned
. . . that he shall in all respects faithfully

comply, without fraud or evasion, with all re-
quirements of law relating to the production
and sale of any beer . . ."

"19 U.S.C. §1309. <u>Supplies for certain vessels</u>
<u>and aircraft - Exemption from customs duties</u>
<u>and internal revenue tax</u>.

"(a)  Articles . . . may be withdrawn . . .
from any brewery . . . free of internal re-
venue tax

   "(1)  for supplies . . . of (A) vessels
   . . . operated by the United States,
   (B) vessels of the United States em-
   ployed in the fisheries or whaling
   business, or actually engaged in for-
   eign trade or trade between the Atlan-
   tic and Pacific ports of the United
   States or between the United States
   and any of its possessions, or between
   Hawaii and any other part of the United
   States or between Alaska and any other
   part of the United States . . .

   "(2)  for supplies . . . of (A) vessels
   of war of any foreign nation, or (B)
   foreign vessels engaged in foreign trade
   or trade between the United States and
   any of its possessions, or between Hawaii
   and any other part of the United States
   or between Alaska and any other part of
   the United States, where such trade by
   foreign vessels is permitted . . ."

"26 U.S.C. §5053.  <u>Exemptions</u>

"(a)  Removals for export. - Beer may be re-
moved from the brewery without payment of tax,
for export, in such containers and under such
regulations, and on the giving of such notices,
entries, and bonds and other security, as the
Secretary or his delegate may prescribe."

Complementary to the statutory provisions above quoted, extensive administrative regulations have been adopted. See Section 245.1 through Section 245.257, Title 26, Chapter 1, Code of Federal Regulations; and Section 252.141 through 252.1504, Title 26, Chapter 1, Code of Federal Regulations.

Section 252.143, Title 26, Chapter 1, Code of Federal Regulations provides, in part:

". . . [E]ach keg, barrel, case, crate, or other package containing beer to be removed without payment of tax under the provisions of this subpart shall be marked as specified below:

"(a)   'Export - Without Payment of Tax' - where the beer is to be removed for export from the United States, or for shipment to the Armed Services for export;

"(b)   'Use on Vessels (or Aircraft) - Without Payment of Tax' - where the beer is to be removed for use as supplies on vessels or aircraft; and

"(c)   Where the beer is removed for deposit in a foreign-trade zone, in addition to and immediately following the markings prescribed in paragraph (a) of this section, the words 'via F.T.Z. No.' followed by the number of the zone . . ."

Section 252.144, Title 26, Chapter 1, Code of Federal Regulations, provides further:

"The consignment, shipment, and delivery of beer removed from a brewery without payment of tax under this subpart shall be in accordance with the applicable provisions of Subpart M."

"Subpart M" to which the last above quoted section makes reference, provides, in part:

"§252.241.   Shipment for export, or for use
on vessels

"All liquors . . . intended for export or
liquors intended for use as supplies on
vessels shall be consigned to the director
of customs at the port of exportation or
port of lading for supplies on vessels,
except that when the shipment is for ex-
port to a contiguous foreign territory
it shall be consigned to the foreign con-
signee at destination in care of the director
of customs at the port of export."

Federal officials are responsible for, and have control
over beer shipped under the aforesaid provisions to the ex-
clusion of state regulation and control.  Texas Liquor Control
Board v. Ammex Warehouse Company, 384 S.W.2d 768 (Tex.Civ.App.
1964, error ref. n.r.e.) cert.den. 86 S.Ct. 547 (1965);
Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, 12 L.Ed.2d
350, 84 S.Ct. 1293 (1964); Department of Alcoholic Beverage
Control v. Ammex Warehouse, 378 U.S. 124, 12 L.Ed.2d 743,
84 S.Ct. 1657 (1963); National Distillers Products Corp. v.
City and County of San Francisco, 297 P.2d 61 (Cal.App. 1956)
cert.den. 352 U.S. 928 (1956).  Cf. McGoldrich v. Gulf Oil
Corp., 309 U.S. 414, 60 S.Ct. 664 (1940), in which the court
discussed similar federal bonding procedures for oil.

Under the theory that the beer here inquired about is
at all times under United States bond and will not be sold
or distributed in or returned to this State, it would be
held not subject to state regulation or control under the
cited cases.

Turning now to your specific inquiries, we advise you
as follows:

I.

The Texas Alcoholic Beverage Commission has no authority
to enforce provisions of the Texas Liquor Control Act against
vendors who sell beer or other alcoholic beverages from ships'

chandlerage under United States Customs Bond assuming that the vendors in question operate in strict compliance with applicable procedures set up by the Federal Government as described above.

## II.

Under the assumption above stated, no legal distinction would exist based upon whether or not the vendor in question held a license or permit issued by the Texas Alcoholic Beverage Commission, since the Commission would have no jurisdiction or authority over the above described activities; and a vendor by qualifying for intra state dealings in alcoholic beverages under the Texas Liquor Control Act does not thereby subject his activities under the United States Custom bonding procedure described above to supervision or control by the Texas Alcoholic Beverage Commission, other than insofar as the Commission may require him to keep his activities strictly segregated from his internal state operations.

## III.

Your third question is answered in the negative in accordance with our answers to the first and second questions.

## S U M M A R Y

Assuming that the applicable federal statutes and administrative regulations herein discussed are strictly complied with, the Texas Alcoholic Beverage Commission has no authority or jurisdiction to regulate sales of beer by vendors who sell such beer from ship's chandlerage under United States Customs Bond.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

-4283-

Prepared by Larry J. Craddock
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Ben Harrison
Scott Garrison
Sam Jones
Jay Floyd

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant Attorney General